IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DWAYNE FURLOW, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Cause No.: ) |
| v. | ) JURY TRIAL DEMANDED ) |
| JON BELMAR, THE COUNTY OF ST. LOUIS, MISSOURI, and ST. LOUIS COUNTY POLICE OFFICER WALSH (BADGE #4068), | ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

For years, St. Louis County has allowed individual police officers unilaterally to issue the equivalent of an electronic arrest warrant without presenting sworn statements to a judicial officer and without obtaining a lawful arrest warrant. St. Louis County police officers refer to this warrantless arrest procedure as issuing a "Wanted." Under this system, ordinary police officers have been given the power to order the arrest of anyone in the County at any time, purportedly for the purpose of "questioning" the person in custody without criminal charge or judicial oversight. This secretive and unaccountable exercise of police power has long devastated largely impoverished black residents of St. Louis County, as hundreds of human beings have been swept from their homes, schools, and families, and brought in for "questioning" by St. Louis County police officers who have been trained that they can arrest and detain people without a warrant. This system flagrantly violates the United States Constitutiton and has no place in a free society.

Plaintiff Dwayne Furlow ("Mr. Furlow"), individually, and on behalf of all others similarly situated, brings this cause of action pursuant to 42 U.S.C. § 1983 to assert constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, which were violated by Defendants St. Louis County Chief of Police Jon Belmar ("Defendant Belmar"), the County of St. Louis, Missouri ("Defendant St. Louis County"), and St. Louis County Police Officer Walsh ("Defendant Walsh"), through their use of an unlawful "wanted for questioning" procedure ("Wanteds"). In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.   Plaintiff Dwayne Furlow is a 31-year-old African-American man arrested by Defendants on January 28, 2016 pursuant to Defendants' "wanted for questioning" procedure. Mr. Furlow brings this class-action lawsuit individually and on behalf of all other similarly situated persons who Defendants have arrested and detained through the use of unlawful Wanteds, a procedure by which Defendants have violated Plaintiff's and the purported class members' Fourth, Fifth and Fourteenth Amendment rights by (1) unlawfully seizing the Plaintiff and purported class members, (2) depriving the Plaintiff and purported class members of liberty without due process of law by detention, and (3) retaliating against the Plaintiff for asserting his constitutional right to remain silent.

## THE PARTIES

2.   Plaintiff Dwayne Furlow is a citizen of the United States of America and a resident of St. Louis County, Missouri.

3.   Defendant St. Louis County, Missouri, is a political and geographic subdividion of the State of Missouri existing pursuant to Missouri law.

2

4.     Defendant Jon Belmar is the current Chief of Police for the St. Louis County Police Department. Defendant Belmar is sued in his official capacity as the supervising and commanding officer of the St. Louis County Police Department.

5.     Officer Walsh, Badge #4068, is a sworn peace officer employed by the St. Louis County Police Department. All of Defendant Walsh's actions set forth in this Complaint were done under color of law. Defendant Walsh is sued in his individual capacity.

## JURISDICTION AND VENUE

6.     This cause is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## GENERAL ALLEGATIONS

7.     Law enforcement agencies in Missouri have long employed a "manifestly unlawful and unconstitutional" practice describable as an "arrest for investigation," whereupon arrests are made "on mere suspicion, or even without pretext of suspicion, for the purpose of getting a person to a convenient location where he can be questioned or 'investigated' as to any crime he or others may have committed. . . ." Sculock, John, *Arrest in Missouri*, 29 U. Kan. City L. Rev. 117, 127 (1961).

8.     At all relevant times herein, Defendants have utilized statewide Wanted bulletins to notify Missouri law enforcement agencies that the St. Louis County Police Department wishes to arrest the named individuals for purposes of investigation.

### U.S. Department of Justice Report

3

9. On March 4, 2015, the United States Department of Justice Civil Rights Division published a report titled, *Investigation of the Ferguson Police Department. See* Exhibit A.

10. The 105-page report detailed myriad Constitutional violations by the Ferguson Police Department, some of which are typical of police departments throughout St. Louis County.

11. Under the section titled, "FPD's Use of a Police-run 'Wanted' System Circumvents Judicial Review and Poses the Risk of Abuse," the Department of Justice described the county-wide practice of issuing "Wanteds" without probable cause as follows:

> [L]aw enforcement agencies in St. Louis County use a system of "wanteds" or "stop orders" as a substitute for seeking judicial approval for an arrest warrant. When officers believe a person has committed a crime but are not able to immediately locate that person, they can enter a "wanted" into the statewide law enforcement database, indicating to all other law enforcement agencies that the person should be arrested if located. While wanteds are supposed to be based on probable cause, see FPD General Order 424.01, they operate as an end-run around the judicial system. Instead of swearing out a warrant and seeking judicial authorization from a neutral and detached magistrate, officers make the probable cause determination themselves and circumvent the courts. Officers use wanteds for serious state-level crimes and minor code violations alike, including traffic offenses.

Exhibit A at 22.

12. The DOJ report describes in detail its findings on how the Wanteds procedure has been used with impunity to circumvent the constitutional warrant requirement:

> [I]nterviews with command staff and officers indicate that officers do not clearly understand the legal authority necessary to issue a wanted. For example, one veteran officer told us he will put out a wanted "if I do not have enough probable cause to arrest you." He gave the example of investigating a car theft. Upon identifying a suspect, he would put that suspect into the system as wanted "because we do not have probable cause that he stole the vehicle." Reflecting the muddled analysis officers may employ when deciding whether to issue a wanted, this officer concluded, "you have to have reasonable suspicion and some probable cause to put out a wanted."

> At times, FPD officers use wanteds not merely in spite of a lack of probable cause, but because they lack probable cause. In December 2014, a Ferguson detective investigating a shooting emailed a county prosecutor to see if a warrant for a suspect could be obtained, since "a lot of state agencies won't act on a wanted." The prosecutor responded stating that although "[c]hances are" the crime was committed by the suspect, "we just don't have enough for a warrant right now." The detective responded that he would enter a wanted.

Exhibit A at 23.

### **Defendants Used Wanted Procedure to Arrest and Detain Plaintiff**

13. On the afternoon of January 25, 2016, Defendant Walsh spoke with Mr. Furlow over the telephone regarding an allegation against Mr. Furlow for domestic assault.

14. Defendant Walsh requested that Mr. Furlow return home to be questioned by Defendant Walsh regarding said allegations.

15. Mr. Furlow told Defendant Walsh that he had no interest in speaking with the police or answering any questions.

16. Defendant Walsh responded that if Mr. Furlow did not answer his questions, Defendant Walsh would issue a wanted for questioning on the domestic assault.

17. Mr. Furlow reiterated that he would not speak to the police.

18. At some point following this conversation, Defendant Walsh issued a Wanted for Mr. Furlow in an internal law enforcement database.

19. The next day, on the evening of January 26, 2016, the complainant spoke to Defendant Walsh as well as a member of the St. Louis County Prosecutor's office, and retracted her domestic assault complaint in its entirety.

20. Defendant Walsh asked the complainant whether she was being pressured to retract her statement. The complainant responded that she was not, and that she had fabricated all of the accusations out of anger.

5

21. Despite this complete retraction of the allegations and withdrawal of the complaint, the Wanted remained in the system for Mr. Furlow.

22. Two days later, on January 28, 2016 at approximately 5:30 pm, Mr. Furlow was driving south on Goodfellow Blvd. in the City of Jennings when he was stopped by St. Louis County Police.

23. The officers explained that the reason for the stop was because the vehicle's temporary dealer's plates were not displayed in the rear of the vehicle. (They were displayed in the front.)

24. During the stop, Mr. Furlow, who was driving, admitted that his license was suspended and that, based on his conversation with Defendant Walsh, he believed that there was either a warrant or Wanted for him in St. Louis County.

25. The officers told Mr. Furlow he would not be arrested for either the license plate or the suspended license, but that they would need to run his name for any warrants or Wanteds.

26. The officers returned to their vehicle and ran a search for Mr. Furlow's name, which revealed the Wanted issued by Defendant Walsh in connection with a domestic assault.

27. The officers then took Mr. Furlow into custody and transported him to the Jennings Police Station at 5445 Jennings Station Road.

28. Officers at the Jennings Police Station informed Mr. Furlow that he was on a 24-hour hold pursuant to the Wanted and that this was the sole basis for his detention.

29. The officers attempted to question Mr. Furlow. Mr. Furlow stated that he did not wish to talk or answer any questions.

30. The officers then informed Mr. Furlow that he would be held in Jennings until he could be transported to the St. Louis County Justice Center in Clayton, Missouri. He would

6

remain at the St. Louis County Justice Center either until Defendant Walsh questioned Mr. Furlow and "cleared" the Wanted or until the end of the 24-hour hold period.

31. Mr. Furlow repeatedly invoked his right to remain silent to officers of the St. Louis County Police Department, both in person and through counsel. Despite this fact, he continued to be held on a "wanted for questioning."

32. During the evening of January 28, counsel for Mr. Furlow notified multiple officers of the St. Louis County Police Department that Mr. Furlow was being held on the basis of an unlawful Wanted and in the absence of probable cause. However, St. Louis County Police refused to release Mr. Furlow pursuant to their policy.

33. In his capacity as watch commander of the 1st Precinct of the St. Louis County Police Department, Sergeant James Grace stated to Mr. Furlow's counsel that Defendant Walsh "followed department procedures" in issuing the Wanted.

34. Mr. Furlow was released from the St. Louis County Justice Center after being held for 24 hours.

35. Defendant Walsh did not personally attempt to question Mr. Furlow during this 24-hour period. No charges have been filed against Mr. Furlow with respect to the domestic assault.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of all others similarly situated, as representative of the following class (the "Class"):

> All individuals, between February 24, 2011 and the date that notice is mailed to the Class who Defendants arrested for investigation or who were arrested or otherwise detained pursuant to a "Wanted" issued or enforced by Defendants or their agents and for whom Defendants or their agents made no application for warrant from a neutral and detached judicial officer in connection with the arrest.

7

37. Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons. Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

38. Plaintiff is a member of the Class which he seeks to represent.

39. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the Class are readily identifiable from the information and records in the possession or control of Defendants.

40. Upon information and belief, the Class consists of at least hundreds of individuals and therefore is so numerous that joinder is impracticable.

41. Plaintiff's claims are typical of those in the Class and are based on the same legal and factual theories.

42. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, and, in fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the Class are premised upon an unlawful pattern and practice by Defendants. The principal common issues include, but are not limited to, the following:

    a. the nature and extent of each Defendants' participation, control, ratification, and promotion of the use of Wanteds for the purpose of committing unlawful investigative detentions;

    b. all of the facts concerning how the system of "Wanteds" functioned, including all police procedures, electronic systems, and policies relating to the issuance and execution of "Wanteds;"

8

  c. whether Defendants' conduct in failing to seek valid warrants for Plaintiff and the other Class members constitutes a violation of the Fourth and Fourteenth Amendments to the United States Constitution; and

  d. whether Defendants' policy of detaining people arrested on "Wanteds" for a period of 24 hours is consistent with the Fourth and Fourteenth Amendments.

43. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has suffered injury from the practices complained of and is ready, willing, and able to serve as class representative. Furthermore, Plaintiff's counsel is experienced in handling class actions and actions involving unconstitutional procedures and policies enacted under the color of law. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

44. Certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that the Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against these Defendants.

**COUNT I**
**§ 1983 Claim for Unlawful Seizure by Arrest in Violation of the**
**Fourth and Fourteenth Amendments to the United States Constitution**

**(Against all Defendants)**

9

For his cause of action against the Defendants in Count I, Plaintiff, individually and on behalf of the Class, states:

45. Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

46. Defendant Walsh, by issuing the Wanted, directly and intentionally caused Mr. Furlow's arrest.

47. The arrest was not authorized by a warrant from a neutral magistrate upon a showing of probable cause.

48. The arrest did not otherwise fall within a legal exception to the constitutional warrant requirement for custodial arrests.

49. The arrest was made on the basis of a Wanted issued solely at the discretion of Defendant Walsh, consistent with the policy of the St. Louis County Police.

50. St. Louis County Police routinely, and as a matter of policy and practice, perform unconstitutional seizures on the basis of Wanteds.

51. The use of Wanteds for this purpose is a policy and practice that is known and ratified by Defendant Belmar in his supervisory capacity over the St. Louis County Police Department.

52. The seizures of Mr. Furlow and of all members of the Class were in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

53. As a direct result of the actions of the Defendants, Mr. Furlow and all class members suffered damages.

54. The acts of Defendant Walsh described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of the Plaintiff, thus entitling Mr. Furlow to an award of punitive damages against Defendant Walsh.

55. If the Plaintiff and the Class prevail, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Dwayne Furlow prays for judgment in favor of Plaintiff and the Class against the Defendants for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT II
### § 1983 Claim for Unlawful Deprivation of Liberty by Detention without Due Process of Law in Violation of the Fourth and Fourteenth Amendments to the United States Constitution

### (Against all Defendants)

For his cause of action against the Defendants in Count II, Plaintiff, individually and on behalf of the Class, states:

56. Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

57. Plaintiff Dwayne Furlow was detained for a 24-hour period on the basis of a Wanted issued by Defendant Walsh.

58. Mr. Furlow's detention pursuant to a Wanted was unreasonable under the Fourth and Fourteenth Amendments, did not comply with the Fourth Amendment's warrant requirement, and did not conform with constitutional due process requirements.

59. The Defendants detained Mr. Furlow based on a policy by the St. Louis County Police Department to hold individuals for a period of 24 hours in the absence of an arrest warrant, charges, or an independent determination of probable cause by a neutral magistrate.

11

60. The St. Louis County Police Department, under the control and supervision of Defendant Belmar, has adopted a default policy of holding persons seized on a Wanted either for 24 hours or until the issuing officer has the opportunity to speak with the seized individual and remove the wanted.

61. This policy and practice is an arbitrary exercise of power by officers of the St. Louis County Police Department.

62. The detentions of Mr. Furlow and members of the Class were in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

63. As a direct result of this policy of 24-hour detentions and the actions of the Defendants, Mr. Furlow and all class members suffered damages.

64. The acts of Defendant Walsh described herein were intentional, wanton, malicious, and/or were callously indifferent to the rights of the Plaintiff, thus entitling Mr. Furlow to an award of punitive damages against Defendant Walsh.

65. If the Plaintiff and the Class prevail, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Dwayne Furlow prays for judgment in favor of Plaintiff and the Class against the Defendants for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT III
### § 1983 Claim for Reliation against Plaintiff Dwayne Furlow for Exercise of his Right to Remain Silent Under the Fifth and Fourteenth Amendments to the United States Constitution

**(Against All Defendants)**

For his cause of action against the Defendants on Count III, Plaintiff Dwayne Furlow, individually, states:

66. Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

67. Mr. Furlow asserted his Fifth Amendment–protected right to remain silent in refusing to make any statements to, or answer questions from, Defendant Walsh.

68. Defendant Walsh attempted to use the threat of a "wanted for questioning" to coerce Mr. Furlow into speaking.

69. When Mr. Furlow still refused to waive his Fifth Amendment privilege, Defendant Walsh retaliated against him by issuing a Wanted.

70. Defendant Walsh was motivated to issue the Wanted against Mr. Furlow because of Mr. Furlow's invocation of his right to remain silent.

71. The intended effect of Defendant Walsh's threat to issue, and eventual issuance of, the Wanted was to discourage Mr. Furlow from refusing to speak with the police.

72. Submitting persons to arrest and detention for refusing to speak with police would chill a person of ordinary firmness from invoking his or her Fifth Amendment right to remain silent.

73. Defendant Walsh's acts were consistent with the policy of the St. Louis County Police Department, as evidenced by Sgt. James Grace's statement, in his capacity as watch commander of the 1st Precinct of the St. Louis County Police Department, that Defendant Walsh "followed department procedures."

74. Defendant Belmar is, and at all relevant times has been, responsible for the control and supervision of the actions and practices of the officers of the St. Louis County Police Department, including department procedures with respect to the issuance of Wanteds.

75. As a result of the acts and policies of the Defendants, Mr. Furlow suffered damages, including being seized and deprived of his freedom, being detained in custody, and emotional distress.

76. The acts of Defendant Walsh were intentional, wanton, malicious, and/or were callously indifferent to the rights of the Plaintiff, thus entitling Mr. Furlow to an award of punitive damages against Defendant Walsh.

77. If the Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Dwayne Furlow, individually, prays for judgment in favor of Plaintiff and against the Defendants for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT IV
### § 1983 *Monell* Claim Against the Defendant County of St. Louis, Missouri for Violation of the Constitutional Rights of the Plaintiff as More Fully Described Herein

For his cause of action against the Defendant St. Louis County on Count IV, Plaintiff, individually and on behalf of the Class, states:

78. Plaintiffs incorporate by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79. There exist, and at all relevant times have existed, within the St. Louis County Police Department and, on information and belief and with reasonable opportunity for further investigation and discovery, the Defendant St. Louis County official policies or customs, practices and usages so pervasive that they constitute policies of the Defendant St. Louis County and the St. Louis County Police Department which have caused and will continue to cause the

harms and deprivations suffered by the Plaintiff and the Class as described in Counts I-III of this Complaint.

80. As such, Defendant St. Louis County is culpable pursuant to *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978), and its progeny.

81. In the alternative, policymakers for the Defendant St. Louis County, including but not limited to Defendant Belmar, were aware of the unlawful use of Wanteds by officers of the St. Louis County Police Department and failed to act to prevent this unlawful behavior in a way that amounted to deliberate indifference to the constitutional rights of County residents. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

82. The policies, practices, customs, and usages of arresting people in the absence of a warrant by a neutral magistrate upon a determination of probable cause, and in the absence of a timely effort to secure a determination of probable cause by a neutral magistrate, violated the right of the Plaintiff and the Class to be free from unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

83. The policies, practices, customs, and usages of depriving people of liberty by detention for a predetermined and arbitrary period of 24 hours, in the absence of a timely effort to secure a determination of probable cause by a neutral magistrate and without due process of law, violated the rights of the Plaintiff and the Class to be free from unlawful seizure and from deprivation of liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution.

84. The policies, practices, customs, and usages of issuing Wanteds in retaliation for refusal to speak with, or answer questions from, officers of the St. Louis County Police

15

Department violated the right of the Plaintiff to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution.

85. The Defendant St. Louis County has the power and responsibility to prevent the existence of the policies and practices described above and has failed and refused to do so. The failure of the Defendant St. Louis County to prevent constitutionally violative conduct as described above caused the constitutional deprivations that have been suffered by the Plaintiff and the Class.

86. As a direct and proximate result of the actions of the Defendant St. Louis County, the Plaintiff and the Class suffered damages to include being retaliated against for assertion of a constitutional right, being seized by arrest, being detained in custody, and emotional distress.

87. If the Plaintiff and the Class prevail, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Dwayne Furlow prays for judgment in favor of Plaintiff and the Class against the Defendant St. Louis County for compensatory damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

Respectfully Submitted,

ARCHCITY DEFENDERS

Blake A. Strode #68422MO
Thomas B. Harvey #61734MO

/s/ Edward J. Hall
Edward J. Hall #0012692IA
*Of Counsel*

*/s/ Nathaniel R. Carroll*
Nathaniel R. Carroll #67988MO
*Of Counsel*

812 N. Collins St.
St. Louis, MO 63102
Tel: 855-724-2489
Local: 314-361-8834
Fax: 314-925-1307
bstrode@archcitydefenders.org
tharvey@archcitydefenders.org

*Attorneys for Plaintiff*