DWAYNE FURLOW,               )
                            )
        Plaintiff,          )        Cause Number: 4:16 cv 00254
                            )
v.                          )        **JURY TRIAL DEMANDED**
                            )
JON BELMAR, et. al.,        )
                            )
        Defendants.         )

## ANSWER OF DEFENDANTS JON BELMAR, THE COUNTY OF ST. LOUIS, MISSOURI OFFICER KEVIN WALSH, OFFICER CHRISTOPHER PARTIN, AND DETECTIVE LAURA CLEMENTS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COME NOW Defendants Jon Belmar, County of St. Louis, Missouri and Kevin Walsh, Christopher Partin, and Laura Clements (referred to in the First Amended Complaint as Detective Clements) and for their answer to Plaintiff's First Amended Complaint deny everything not specifically admitted and in particular state as follows:

The Section of the First Amended Complaint that is marked "Introduction," and which consists of two paragraphs is not numbered. This section is not a short statement of alleged facts, but rather this section consists of intentionally inflammatory argument, and in addition includes a reference to a Missouri State Highway patrol summary report and State of Missouri census data, which does address "Wanteds" in St. Louis County Defendants move to strike this un-unnumbered argumentative section. In the alternative this unnumbered, argumentative section is denied. In support of the denial, defendants state that "Wanteds' are issued by St. Louis County police only when there is probable cause to arrest. Further, if plaintiffs have knowledge of situations where a "wanted" was issued by St. Louis County without probable cause, plaintiffs have not disclosed that information in Plaintiff's Initial Disclosures presented

less than one month ago when the only people identified were Dwayne Furlow, Latoya Furlow, Officer Kevin Walsh and Sgt. James Grace.   In that case Latoya Furlow ran to a neighbor's house asking the neighbor to call police because of domestic violence, and then Officer Kevin Walsh was called to respond to the 911 call, and Sgt Grace was not involved, but according to plaintiff Furlow's pleadings, an unnamed attorney made a telephone call and Sgt Grace spoke on the telephone, and plaintiff Furlow's own pleadings  essentially indicated that his wife, who it is believed in good faith was a victim, fabricated the incident.  In fact there was probable cause to believe that Mr. Furlow had committed a domestic assault and that his wife was the victim, and now, in the First Amended Complaint, it is pled by plaintiffs that yet another person had made an accusation against Dwayne Furlow that on a different date that he  committed both an assault and a theft.

The second section "Nature of the Action" is also not numbered.  Defendants move to strike this un-numbered section.  In the alternative defendants deny that plaintiffs are or can be the representatives of a class of "others similarly situated," and absolutely deny that plaintiffs Fourth, Fifth, and Fourteenth Amendment rights were violated by these defendants.

1. Defendants admit paragraph 1.

2. Defendants admit paragraph 2.

3. Defendants admit paragraph 3

4. Defendants admit paragraph 4.

5. Defendants admit paragraph 5.

6.  In answer to paragraph 6 defendants admit that Officer Kevin Walsh is a sworn peace officer employed by St. Louis County, and admit that his actions as a St. Louis County police officer are under color of state law, but defendants deny that plaintiffs have stated

a claim against Officer Walsh in his individual capacity, or in the event that plaintiffs may have arguably stated a claim, then defendants deny that plaintiffs' allegations have merit.

7. In answer to paragraph 7 defendants admit that Officer Christopher Partin is a sworn peace officer employed by St. Louis County, and admit that his actions as a St. Louis County police officer are under color of state law, but defendants deny that plaintiffs have stated a claim against Officer Partin in his individual capacity, or in the event that plaintiffs may have arguably stated a claim, then defendants deny that plaintiffs' allegations have merit.

8. In answer to paragraph 8 defendants admit that Detective Laura Clements is a sworn peace officer employed by St. Louis County, and admit that her actions as a St. Louis County police officer are under color of state law, but defendants deny that plaintiffs have stated a claim against Detective Clements in her individual capacity, or in the event that plaintiffs may have arguably stated a claim, then defendants deny that plaintiffs' allegations have merit.

9. Defendants deny that there are "John Doe" officers who violated the rights of these plaintiffs.

10. Paragraph 10 does not state a claim or a fact, or any allegation of wrongdoing. To the extent that it may be interpreted to state a claim, then paragraph 10 is denied.

11. Defendants admit that this Court has jurisdiction over an action purportedly brought pursuant to 42 U. S.C. §1983, and defendants admit that venue is appropriate.

12. Paragraph 12 seems to be mixing things up, perhaps intentionally. In the unnumbered section called "Introduction" plaintiffs complain of the issuance of a "Wanted" by St.

Louis County police officers before an arrest. Now in paragraph 12 plaintiffs state that "an individual arrested without a warrant must (then) be provided with a determination that probable cause for such arrest by a disinterested judicial officer without unreasonable delay." Plaintiffs then cite two cases but out of context as *County of Riverside v. McLaughlin*, 500 U. S. 44 (1991) held the Fourth Amendment does not compel immediate determination of probable cause and although county was entitled to combine probable cause determination with arraignment, the practice could result in delays exceeding permissible 48 hour period. Plaintiffs also cited *Gerstein v. Pugh*, 420 U. S. 103 (1975) which held that there must be a judicial determination of probable cause as a prerequisite to an extended restraint of liberty following arrest. So in answer to paragraph 12, defendants state the Court system of St. Louis County, Missouri is in compliance with Fourth and Fourteenth Amendments; and further answer that the cases cited by plaintiffs did not pertain to "Wanteds' based upon probable cause that are issued prior to arrest. Further answering to whatever extent paragraph 12 could be construed or interpreted that these defendants violated the Fourth and Fourteenth Amendments, it is denied.

13. Defendants deny paragraph 13.

14. Defendants deny paragraph 14. For further answer defendants state that plaintiffs have not very carefully read the order, and either intentionally or not very carefully presented a quotation out of context. General Oder 15-26 (not 15-16) Section III,B.1 states

1. "Entry of persons wanted for an ordinance, misdemeanor, or felony where no warrant has been applied for, requires at a minimum, the report number, name (last and first) date of birth, height and weight."

    a. (Note the following bold letters are <u>not</u> emphasis added. In the General Order in bold the paragraph continues as follows: **Once the case officer has determined probable cause exists that a person has committed a crime,**

only the case officer shall request wanted person entries.  The case officer
will contact CARE or DCI Word Processing and requesting a wanted
entry on the person.

b. Normally *only users of the REJIS* system can view wanted records.  (emphasis
added).  A *temporary* (emphasis added) wanted record without a warrant may
be entered into the MULES and/or NCIC systems to be viewable by other
agencies for a *period of 48 hours*(emphasis added) under the following
guidelines:

1) If prompt action is required to apprehend a person (including a
   juvenile **that the** officer has **probable cause** (No emphasis added.
   The bold print appears in the General Order) to believe has committed
   a felony or serious misdemeanor; and

2) It is believed the individual may seek refuge by fleeing across
   jurisdictional boundaries and circumstances *prevent the immediate
   acquisition of a warrant;* (emphasis added); and

3) The case officer is prepared to respond anywhere within the
   extradition limits of the wanted record in the event the person is
   arrested; and

4) The case officer's supervisor has authorized the entry of the wanted
   record into MULES and/or NCIC

15. Defendants deny paragraph 15.  For further affirmative answer defendants state that they

are attaching Exhibit A, plaintiff's disclosures, which show that plaintiffs, just one month

ago disclosed information pertaining only to one arrest of plaintiff Dwayne Furlow.  So

assuming that plaintiffs did not intentionally fail to disclose information in contravention

of the Federal Rules and in contravention of this Court's Order, the plaintiffs have no

basis to make the arguments that they made in paragraph 15.  For further affirmative

answer defendants state that Wanteds that are placed in REJIS are validated and are

purged.

16. Paragraph 16 is denied.  As further answer defendants state that it is irresponsible to

allege that the General Order "provides that Wanteds may be entered into REJIS

indefinitely" when it absolutely does not say that, as shown by Doc #14-1, Exhibit A.

17. Paragraph 17 is pure argument, by arguing what the General Order "does not require," and therefore it is denied. As further answer, defendants state that the General Order presents a procedure and limitations and restrictions for the issuance of "Wanteds," but that wanted are validated and are purged.

18. Paragraph 18 is again argument and is denied on that basis. For further answer, defendants admit that Jon Belmar, chief of police, approved the requirement that no wanted could be issued without the determination that there is probable cause for arrest, and that other restrictions and limitations be required in addition to probable cause for arrest.

19. The allegations in paragraph 19 present a less than careful reading of Doc # 14-1, and mixes up Wanteds and Stop Orders, and is out of context. Reference is made to the answer to paragraph 14 above where the applicable section of the General Order is quoted carefully. A brief summary of that section is that "Wanteds" are normally not entered into the MULES system but there are times when they are allowed for 48 hours if prompt action is required to apprehend someone, and if there is probable cause to believe a felony or serious misdemeanor has been committed, that it is believed the person who committed the crime may cross jurisdictional boundaries, that the case officer is prepared to respond anywhere within extradition limits, and the *case officer's supervisor has authorized the entry of the wanted record into MULES and/or NCIC.*" (emphasis added).

20. Paragraph 20 is argument and is incomplete, and on that basis it is denied. It is the policy and practice of St. Louis County, with regard to its police department, to protect and to serve the community, which includes fighting crime, and recognizing the constitutional rights of all, which includes attempting to arrest people when there is probable cause to

believe that they have committed criminal offenses, within the Court system, and within decades of prosecuting attorney requirements, and within situations found in urban settings more so than rural settings.

21. Paragraph 21 is argument and is denied. As further answer defendants state that even when there is probable cause to believe that someone has committed a crime, and should be arrested for the crime, that person still has rights, and it is the policy and practice of these defendants to honor the rights of individuals.

22. Paragraph 22 is argument and is denied. As further answer defendants deny that wanted are issued "at the whim of St. Louis County officers." As further answer, defendants state that it is obvious that the plaintiffs have no basis to make this allegation, since just one month ago their Disclosures disclosed just one arrest, that of Dwayne Furlow, who had been accused of domestic abuse violence by his own wife, not by a police officer. The argument of paragraph 22 is magnified by referring to persons who were accused by other citizens, (not by police) of committing domestic violence, assault, sexual abuse, burglary, theft, and violations of law as being "Victims," having no recourse other than turning themselves in.

23. Defendants deny paragraph 23.

24. Paragraph 24 is denied. As further answer, defendants note that to support their unfounded allegations that these defendants do what is listed in paragraph 24, that plaintiffs cite a Kansas City Law School article written55 years ago that made assertions regarding how other agencies in the State of Missouri (and the quote of plaintiffs did not refer to St. Louis County even 55 years ago) may have done things then. For further answer defendants not only deny that they have done what is alleged in paragraph 24 but

point out that plaintiffs Initial Disclosures did not disclose anything other than the domestic violence "wanted" involving Dwayne Furlow when his wife went to a neighbor's home from Mr. Furlow requesting that police be called because of a domestic violence accusation that she said had just occurred.

25. Paragraph 25 once again consists of argument and therefor is denied, although it is admitted that there are times that even though there is probable cause for arrest, that a person is released after the arrest occurs.

26. Defendants move to strike paragraph 26 for the reason that said paragraph refers to a hearsay "Investigation of the *Ferguson* Police Department," but the only defendants in this case are St. Louis County, the St. Louis County police chief in his official capacity, and three St. Louis County police officers.   In the alternative, defendants state that to whatever extent that paragraph 26 may be deemed to apply to these defendants, then Paragraph 26 is denied.

27. Defendants move to strike paragraph 27 for the reason that said paragraph refers a hearsay report and further it refers to other police departments and to "courts throughout St. Louis."    In the alternative, defendants state that to whatever extent that paragraph 27 may be deemed to apply to these defendants then Paragraph 27 is denied.

28. Defendants move to strike paragraph 28 for the reason that said paragraph refers to a hearsay report, and also refers to a *Ferguson* Police Department General Order, but the defendants in this case are St. Louis County, the St. Louis County police chief in his official capacity, and 3 St. Louis County police officers.   In the alternative, defendants state that to whatever extent that paragraph 28 may be deemed to apply to these defendants, then Paragraph 28 is denied.

29. Defendants move to strike paragraph 29 for the reason that said paragraph refers to a hearsay report and refers to officers of the *Ferguson* police department. In the alternative, to whatever extent that paragraph 29 may be deemed to apply to these defendants, then paragraph 29 is denied.

30. Defendants move to strike paragraph 30 for the reason that said paragraph refers to a hearsay report and refers to a specific supervisor of the *Ferguson* police department. In the alternative, to whatever extent that paragraph 30 may be deemed to apply to these defendants, then paragraph 30 is denied.

31. Paragraph 31 seems to be an explanation of what will be alleged and does not require a response. To whatever extent paragraph 31 may be deemed to suggest any wrongdoing on the part of these defendants, then it is denied.

32. In answer to paragraph 32 defendants state as follows. With regard to the phrase "Shortly after Mr. Furlow's departure from home on the morning of November 11, 2015" this is denied, because not one but two people gave information to the police that Dwayne Furlow was actually present, and in addition Mr. Furlow gave an account that he saw and heard a fight involving his son and the children of a neighbor, and so it is believed in good faith that this phrase concerning his "departure" is false, or at least open to question. Regarding the phrase "Mr. Furlow's minor son was attacked by his adult female neighbor," this is denied based upon accounts given by not one but two neighbors. Further, since plaintiffs' attorneys have filed a First Amended Complaint filled with argument, the argument here is that if indeed Mr. Furlow's minor son had truly been attacked by an adult neighbor that Mr. Furlow would be cooperative with the police to try to bring the adult neighbor to justice.

33. In answer to paragraph 33, defendants state as follows. The reason that police arrived is that someone called police to say that there a fight was occurring. So police arrived and tried to sort this out and listen to people. So defendants admit the allegation that an adult female neighbor said that Mr. Furlow had stolen her cell phone, but the full story is that the adult female neighbor said that she had been recording with her cell phone what Mr. Furlow's child was doing to her child, and then Mr. Furlow came up to her, and with force took the cell phone from her and left the scene.

34. Defendants deny paragraph 34. As explanation defendants state that Officer Partin not only did not know Mr. Furlow, but Officer Partin did not know Mr. Furlow's cell phone number, and so he did not call Mr. Furlow, but while Officer Partin was speaking to witnesses to try to sort out what happened that made someone decide to call the police, that Mr. Furlow's son, with a cell phone in hand, walked over to Officer Partin and said "my dad wants to talk to you."

35. In answer to paragraph 35 defendants state what actually happened was Officer Partin said hello and asked the voice who apparently was Mr. Furlow, if he could tell him what was going on, that voice, presumably Mr. Furlow, was talkative, and he did answer questions on the phone and he gave different accounts, but only when he was asked about the taking of the cell phone, then he said that he would not answer the question, but he did say that his son had been assaulted and he asked the officer to do his job and arrest the person who had assaulted his son.

36. Paragraph 36 is partially 's, did not initially decline to answer questions, in fact when Officer Partin said, hello, can you tell me what is going on, the voice, presumably Mr. Furlow's, was talkative. It was only when Officer Partin asked this person about the

allegation that a neighbor said that she had been recording the fight with her cell phone, and that Mr. Furlow grabbed the cell phone with force and took it away, that it was only then that the voice, presumably Mr. Furlow's, declined to answer the question.

37. In answer to paragraph 37 defendants disagree that the Officer "threatened" Mr. Furlow. Officer Partin did wish to afford Mr. Furlow his rights, which necessitated speaking to him in person and to read the Miranda warnings and to see if Mr. Furlow then wished to make a statement. At that point Officer Partin had probable cause to arrest, consisting of observing a mark on the woman who said that Mr. Furlow had snatched the camera from her with force, the statement from the woman that the camera had been stolen, and a statement from a third party eyewitness who identified Mr. Furlow by name, and who said that the altercation, between the woman and Mr. Furlow had already started when he looked over and so he was not certain who had started the altercation, and that he actually saw Mr. Furlow take the cell phone from the woman. So when Mr. Furlow said that he would not come by, the officer factually informed Mr. Furlow that he had enough information to place a wanted, after which Mr. Furlow responded that the officer should do his f…ing job.

38. Defendants deny paragraph 38 as it is written. As indicated above, Mr. Furlow told the officer to do his f…ing job.

39. Defendants admit paragraph 39, with the added statement that there was probable cause for the arrest of Mr. Furlow.

40. In answer to paragraph 40 Defendant Partin admits that he spoke with attorney Blake Strode multiple times. In fact multiple times is probably an understatement.

41. In answer to paragraph 41 defendant Partin denies that the word "quash" was ever used in conversations with attorney Blake Strode. That word is not in Officer Partin's vocabulary, he is not certain what it means, and he does not remember it ever being used, and so he denies that attorney Strode asked him to "quash" the wanted. In fact the attorney, during the multiple times that he spoke with the officer, wanted to know what would happen when Mr. Furlow was turned in, and the attorney made multiple promises that Mr. Furlow would be turned in at specific times, but then they did not appear at those times until finally a month and a day after the incident, they did appear. Defendant Partin admits that the attorney made a mention of history and made a mention of a restraining order.

42. In answer to paragraph 42 defendants deny any phone calls except to Officer Partin, and deny the accuracy of the self-serving legal arguments made by plaintiffs' counsel in a letter, and deny its relevance and move to strike the self-serving hearsay quotations.

43. Paragraph 43 is argument of counsel regarding their self-serving hearsay statement where they are making themselves witnesses to this lawsuit and trying to make an unnamed administrator of the County Counselor's office a witness, and so defendants deny paragraph 43 and move to strike it.

44. Paragraph 44 is argument and so the argument is denied as it is written. Defendants admit only that after numerous representations by an attorney that Mr. Furlow would turn himself in, which representations were not honored, that one month and one day after the incident, that Mr. Furlow and his attorney appeared without notice, after which they were accommodated as quickly as possible.

45. In answer to paragraph 45, defendant Partin admits that Counsel for Mr. Furlow contacted him numerous times; "several times" is an understatement. The attorney set up times, Officer Partin waited, but then they did not show up, until they finally up without setting it up in advance, but nonetheless they were accommodated very quickly.

46. Paragraph 46 is unclear as to what is meant by "at this time." But defendant Partin admits that counsel for Mr. Furlow, on more than one occasion, indicated that Mr. Furlow would exercise his 5th Amendment right not to incriminate himself, which right was respected by Officer Partin.

47. Paragraph 47 is argument and is therefore denied. Officer Partin did not "insist" on anything, but when the attorney asked on different occasions what would happen or what the procedures were when someone turns himself in at the precinct he was politely answered.

48. Paragraph 48 is argument and is therefore denied. Defendant Partin admits factually that on December 12, 2015 that Mr. Furlow and his counsel presented themselves at the St. Louis County Justice Center for booking and processing, and admits factually that counsel had not told Officer Partin that they would appear there at that time, but nonetheless they were accommodated.

49. In answer to paragraph 49, defendant Partin states that he personally is not aware what time that Mr. Furlow and his attorney arrived at "the jail" because he was on patrol in a different area of St. Louis County, and because Attorney Strode had not told him that they would appear at "the jail" on December 12, and then he had to stop his patrol, come to Clayton, park the car, and find them, and so it may be true that it was close to an hour after Mr. Furlow and his attorney arrived before Officer Partin appeared, but Officer

Partin accommodated everyone quickly, professionally, and politely. With regard to the allegation that Officer Partin arrived "with a supervisor" defendant Partin states that he had been on patrol with another patrol officer and he arrived with the patrol officer that he had been on patrol with.

50. In answer to paragraph 50 regarding the Miranda warning, Defendant Officer Partin admits that Mr. Furlow's 5th amendment right to remain silent was communicated to Officer Partin, after which Officer Partin issued a summons for appearance in Night Court and Mr. Furlow and his attorney then left.

51. The way that paragraph 51 is phrased is argumentative and so it is denied in the form that it is presented. Factually defendant Partin admits that he issued a summons to Mr. Furlow to appear in night court to answer to charges of Assault and Larceny.

52. Defendant Partin denies paragraph 52 because it is argumentative and because he did not use the word "quash" which is not in his vocabulary, he did not use that word, and that word is presented by plaintiffs as argument. Factually defendant Partin admits that he issued the summons, and he did in fact remove the "wanted" that very day, and so what he would have said is that he will remove the "wanted."

53. Paragraph 53 is admitted.

54. In answer to paragraph 54, the context of Night Court includes that there are numerous attorneys approaching the prosecutor, and in that context it is admitted that Mr. Furlow's attorney asked the prosecutor to read and discuss what is being called by plaintiff as "the charging document" but which is the summons, which lists the charge and which is to give a brief description of facts.

55. In answer to paragraph 55 defendants state they do not have personal knowledge of the discussion that occurred at the place and time and so paragraph 55 is denied. However in further answer to paragraph 55 states that what plaintiffs refer to as a "charging document" could be and would be amended whenever deficiencies are discovered and that this would be done long before trial.

56. In answer to paragraph 56 defendants deny that was all that was on what plaintiffs refer to as a "charging document" and further for answer state that are amended when a deficiency is noted, and would have been amended but for what is stated in paragraph 57 below.

57. Defendants deny the portion of paragraph 57 that says "before any argument from Mr. Furlow's counsel, but defendants admit that the municipal prosecutor entered a nolle prosssequi, which according to the notes entered in the regular course of business at the time of or very near the discussion:

> "atty appeared in ct, says it's a neighbor dispute and the neighbor is not mentally well. says they have since moved."

So this is very concerning. A prosecutor factors in what attorneys tell them, and there is an element of trust that an officer of the court will be truthful, will give accurate information, will not mis-lead the prosecutor, and will not slander other people, and will not orchestrate a dismissal with improper motives. So the prosecutor, in an element of trust, relied on the accuracy of the statement of the attorney and used judgment to enter a nolle prossequi (and as noted Officer Partin had previously relied upon statements of Mr. Furlow's attorney that his client would turn himself in at specified times and then did not appear).

58. Paragraph 58 is misleading in that it is simplistic, out of context, it leaves out what preceded this, and mis-representative of the facts of the case pertaining to Mr. Furlow on January 26, 2016. If plaintiff would allege that his wife had run from plaintiff, to a neighbor's house crying and distraught, and that the neighbor telephoned the police at plaintiff's request stating to the dispatcher that plaintiff said her husband had beat her up, and then it was indicated that that the wife was crying and distraught, and then when Officer Walsh arrived at the neighbor's house, that the wife was still claiming an assault, stating that plaintiff had knocked her down and had stomped on her legs and dragged her by the hair, after which she ran to the neighbor's house, after which plaintiff drove away, and that the wife told Officer Walsh that she wanted to press charges against her husband, and then while Officer Walsh was speaking to the wife to gather information to continue to determine whether there was probable cause, that someone, presumably Mr. Furlow, called the wife's cell phone, and that Officer Walsh answered the telephone asking the person on the other end of the phone to come talk to him in person, after which the voice, presumably plaintiff, indicated that he would not because he had already spoken to his attorney who told him that if he did, that he would be locked up, and then if plaintiff alleged that with the permission of Mrs. Furlow, that Officer Walsh entered the house to see whether the plaintiff, who had just been accused by the wife of domestic assault, could have returned to the house by the back door (which occurs in domestic violence cases) and then in plain view there was a high powered AR-15 rifle loaded with 30 rounds of ammunition, one of which was in the chamber, and if plaintiff had alleged that this loaded weapon was in his house despite the fact that he was on probation for a felony, then paragraph 58 would be admitted. Because Officer Walsh

does not have personal knowledge that the voice who refused to see Officer Walsh in person was in fact plaintiff, paragraph 58 is denied.

59. In answer to paragraph 59 defendant Walsh admits only that Officer Walsh told the voice, ( i.e. the person on the other end of a telephone conversation) that he was a St. Louis County police officer, that the voice said he would not allow himself to be questioned, because his attorney, (now it is presumed that his attorney was one or more of the attorneys whose names have appeared on the pleadings herein) had just told him that "if I turned myself in I would get locked up."

60. Defendant Walsh deies paragraph 60, and states affirmatively that the voice on the other end of the telephone indicated he would not voluntarily turn himself in because his attorney told him "if I turn myself in I would get locked up."

61. Defendant Walsh denies paragraph 61 because a police officer cannot confirm that a voice on the other end of a telephone conversation belongs to a person who the officer has never talked to before. Defendant Walsh admits only that Defendant Walsh he did have probable cause to arrest Mr. Furlow.

62. Defendant Walsh denies paragraph 62.

63. Defendants admit paragraph 63 but only with the caveat that there was probable cause to arrest plaintiff and that on the screen when a "Wanted" is entered, that there is a written reminder in bold letters that probable cause to arrest must exist.

64. To answer paragraph 64 defendants first state that it is well known, or at least well taught by experts and advocates for women who are victims of domestic violence, that female victims of domestic violence are pressured by the abusers to recant their statements, and that they often do so within 24 hours. So in answer to paragraph 64,

defendant Walsh admits only that there was a voice on the telephone with him, and the voice may likely have been plaintiff's wife, but because it is taught by advocates of victims of domestic abuse, that abusers coerce those whom they abuse to recant their statements, that Officer Walsh, out of empathy and concern for what had appeared to be an obvious victim of domestic abuse, indicated that he would like for her to come in person to discuss this, rather than on the telephone when the abuser might be by her side, forcing her to make the call.

65. Defendant Walsh denies paragraph 20 as it is pled because those were not the words that were spoken, but rather what appears to be a carefully pled paraphrase, but admits that Mrs. Furlow, the apparent victim, was treated with compassion and respect and empathy, and that there was a concern that she was being pressured to say the words that she was saying.

66. Defendant Walsh denies paragraph 66. As further response it is stated that this appears to once again be a carefully pled allegation using at least one word "quash" that is not used by the police officer. As further response denying that he told Mrs. Furlough to call the prosecuting attorney's office, it is stated that Domestic Violence cases are often seen through by the Prosecutors despite so called retractions because there still is evidence of crimes having been committed.

67. Defendants have no knowledge of the allegations of paragraph 67 and therefore deny same. As further answer defendants state that if it is true that "complainant" spoke with a member of the Prosecuting Attorney's office, that person was not identified in plaintiff's initial disclosures, and so there has been a withholding of information, either intentionally

or by some sort of excusable neglect. For further answer defendants note the wording of paragraph 67 is once again carefully pled.

68. Defendants deny paragraph 68 because the apparent victim of domestic violence did not retract the allegation in person, that it could not be certain that the voice was that of the victim of domestic violence and that the events of January 26, 2016 strongly suggested probable cause and reasonable suspicion, and the probable cause and reasonable suspicion did not cease on January 28, 2016. It should be noted that with plaintiff's First Amended Complaint, it is now realized that Mr. Furlow had been accused by another woman of a form of violence.

69. In answer to paragraph 69, defendants do not dispute that on January 28, 2016 at approximately 5:30 p.m. that plaintiff was driving south on Goodfellow Blvd,. , but deny that this was in the city of Jennings, and deny that the officers who stopped him were St. Louis County police officers.

70. In answer to paragraph 70 defendants state that they do not have personal knowledge that plaintiff was driving a vehicle that did not have plates on the rear, as is required under Missouri law, but these defendants do not dispute this allegation. For further answer these defendants do not have personal knowledge whether plaintiff had a dealer license displayed on the front of the vehicle, and so deny that allegation.

71. In answer to paragraph 71, defendants state that they do not have personal knowledge that Mr. Furlow actually told an officer from another jurisdiction that his operator's license had been suspended, but defendants do not challenge this allegation at this time. Further defendants do not have personal knowledge that plaintiff volunteered to the

officer from another jurisdiction that there was a "Wanted" issued against him by a St. Louis County officer and so deny that allegation.

72. These defendants do not have personal knowledge of what the unnamed officer or officers from another jurisdiction who pulled plaintiff over on Goodfellow Blvd told plaintiff, and so paragraph 72 is denied at this time.

73. These defendants do not have personal knowledge of what officers from another jurisdiction did or what they determined, and so paragraph 73 is denied at this time.

74. Defendants do not have personal knowledge of what officers from another jurisdiction acted upon and so paragraph 74 is denied at this time.

75. Defendants deny paragraph 75

76. Defendants deny paragraph 76.

77. In answer to paragraph 77 defendants admit that plaintiff was transferred to the St. Louis County Justice Center but deny all other allegations of paragraph 77.

78. Defendants deny paragraph 78. except that defendants admit that as documented in a supplemental report, a police officer did read to Mr. Furlow his rights per a St. Louis County issued Miranda card, after which Mr. Furlow told that officer that he did not wish to talk to the officer who had just read to him the Miranda warning.

79. Defendants deny paragraph 79. It is noted that plaintiffs do not identify who plaintiff Furlow's counsel is, and it should also be noted that this counsel was not identified in plaintiff's initial disclosures, either intentionally or by excusable neglect, but based upon the new allegations filed by Mr. Furlow in the First Amended Complaint, it appears now that one or more attorneys signing the pleadings in this case were active participants in

matters resulting in the civil prosecution of one or more police officers in their individual capacities.

80. Paragraph 80 is misleading. Plaintiff had earlier alleged that he had been transported to the Jennings Precinct. Then in paragraph 80 plaintiff identifies a sergeant from a different precinct, the North County precinct, who had no involvement with plaintiff or the officers who transported plaintiff to the Jennings precinct, and then plaintiff alleges that an unnamed "counsel for Mr. Furlow" (now it appears that the unnamed counsel, who was not disclosed in initial disclosures but may have been at least one of the signers of the pleadings filed in this case) spoke to a Sgt. Grace, but apparently whatever scenario was presented on the telephone to Sgt. Grace elicited some sort of response that department procedures appeared to have been followed. So Paragraph 80 is denied but with the additional caveat that not only were department procedures followed by Officer Walsh but also state statutes, and the U.S. Constitution.

81. Paragraph 81 is argument and for that reason it is denied. As further explanation what plaintiff is argued in paragraph 79 that "counsel for Mr. Furlow" told unnamed officers that there was not probable cause. Despite the assertions by "counsel for Mr. Furlow" (now thought to one or more of the attorneys on plaintiffs' pleadings in this case) that their position is that there was not probable cause, it was nonetheless believed in good faith that there was probable cause to believe that Mr. Furlow had committed a crime, and so state law was followed, the clearly apparent victim of the domestic violence crime was out of danger for at least a small period of time which has been known to give the victim the courage to come forward.

82. Paragraph 82 is admitted with the caveat that plaintiffs choose to call the St. Louis County Justice Center facility the "county jail," which again is carefully pled by plaintiffs.

83. Defendants state that paragraph 83 is argumentative because it implies that the only possible police officer who could or should question a suspect of a crime is the officer who responded to the original call, which is not true, and so the argumentative paragraph 83 is denied. Further paragraph 83 argues implicitly that because charges have not yet been issued that there was no probable cause, which argument is denied for several reasons including but not limited to the fact that probable cause can exist even though charges are not later issued; and, incidentally, the statute of limitations has not expired on the prosecutor issuing charges in this case, and also domestic violence charges are issued and prosecuted by prosecutors even when the victim has recanted, but the decision to issue or not to issue charges, and the decision to continue or not continue a prosecution is not made by police officers but is made independently by the prosecutor taking factors in consideration that may not be known to these police officers.

84. Paragraph 84 is argumentative and so to that extent it is denied. As explanation, it is stated that it is permissible to make a warrantless arrest as long as there is probable cause. Court procedures are in place and prosecuting attorney procedures are in place to have judicial determination of probable cause if any detention is extended.

85. Paragraph 85 has separate elements which will be attempted to be answered separately Detective Laura Clements admits that it was brought to her attention that the Missouri Department of Social Services Children's Division, conducted an investigation of Ralph Torres. As far as what was presented to Detective Clements, the investigation involved

one child. So if a separate investigation was conducted by what plaintiff calls "Division of Child Protective Services," that information was kept confidential, but apparently Mr. Torres, since he has alleged that, believes it to be true. With regard to one of the children, Detective Clements does not have personal knowledge of what the investigation involved or what was "ultimately found" and so that is denied. With regard to another of the children, Detective Clements has knowledge that forensic interview was conducted to determine if sexual abuse occurred. The forensic interview is conducted in a neutral background by a social worker, and no leading questions are asked. The forensic interview conducted by the Missouri Department of Social Services Children's Division provided probable cause for the arrest of Mr. Torres.

86. Paragraph 86 is confusing in the way that it is worded, and so it is denied for that reason and other reasons that will be explained. The first part of the sentence appears to suggest that Mr. Torres received notice of the Division's favorable decision to close the investigation. Detective Clements has no personal knowledge what Mr. Torres received, and so that is denied. (And it should also be noted that whatever this notice was , was not produced in disclosures). Because Mr. Torres, in paragraph 85, alleged the state investigated sexual misconduct involving two minor children it can only be speculated that the State closed one of the minor children but not the other. The second part of paragraph 86 alleges that "Mr. Torres believes his ex-wife attempted to submit the same false allegations to the St. Louis County police. Detective Clements does not know what "Mr. Torres believes," and so that is denied. If plaintiff is alleging that the "ex-wife" came to the St. Louis County police with allegations, that is denied. The referral to Detective Clements' division, which is the Division of Criminal Investigation, Bureau of

Crimes Against Persons, came from the Missouri Department of Social Services, Children's Division, not from an "ex-wife."

87. In answer to paragraph 87 Detective Clements states that she had called Mr. Torres a first time, left a message, but Mr. Torres did not return the call. Then Detective Clements called a second time, and then soon after the conversation began Mr. Torres said that "you have to talk to my attorney," and so no further information was requested.

88. Detective Clements denies paragraph 88. To explain, did <u>not</u> state that he would be agreeable to answer questions; he just stated that Detective Clements has to talk to his attorney.

89. Detective Clements has no personal knowledge that Mr. Torres shortly thereafter called his attorney and so paragraph 89 is denied.

90. Paragraph 90 is either carefully pled or is just confusing the way that it is pled. It appears that plaintiff is saying that an attorney telephone Detective Clements "and (unnamed) St. Louis County police." The answer to this, is that Detective Clements has no knowledge of this and it is denied. With regard to plaintiff's hearsay claim that his attorney telephoned Detective Clements, the answer is yes, there was an exchange of missed calls.

91. Paragraph 91 is argumentative, carefully pled, and misleading and therefore is denied. As explanation it is alleged that Mr. Torres did not receive a return call from Detective Clements. Once Mr. Torres stated, or once it was learned that Mr. Torres had an attorney, that was honored and so Mr. Torres was not contacted. The hearsay claim that Attorney Featherston did not receive a return call is denied.

92. Paragraph 92 is argumentative, carefully pled, and misleading and therefore is denied. Once again, once Mr. Torres stated, or once it was known that Mr. Torres had an attorney, that was honored, and so communication attempts were made with his attorney.

93. Defendants admit paragraph 93, except that it is believed that the date was April 1, 2015..

94. Defendants admit part of paragraph 94. It is believed by Detective Clements from reading a report that the child was in the backyard and Mr. Torres was in the garage.

95. Defendants admit that the officer told Mr. Torres that he had a Wanted. Defendants do not have knowledge whether Mr. Torres attorney had told him of the wanted and so that is denied.

96. Paragraph 96 is admitted only to the extent that Mr. Torres contacted the child's mother. Any other conversation is unknown at this time and is denied.

97. Paragraph 97 is admitted.

98. Detective Clements has no knowledge of this and therefore denies this at this time

99. Detective Clements has knowledge that Mr. Torres was taken to the St. Louis County Justice Center and was processed, and so that much is admitted.

100. Detective Clements does not have knowledge of what plaintiff is saying and so denies this at this time. If plaintiff is alleging that when he was initially processed that he was in a waiting area to see the intake nurse that is probably correct.

101. Paragraph 101 is denied. As explanation, after Detective Clements came on duty she saw Mr. Torres at the Justice Center, and it is believed that approximately 8:40 p.m. on the same date that Mr. Torres was arrested.

102. Paragraph 102 is denied.

103.     Paragraph 103 is denied the way that it is carefully pled.  It is admitted only that Mr. Torres said he has an attorney and he does not wish to speak to the police, which was honored.  Mr. Torres never said he was speak to the police with his attorney present.

104.     Defendant admits paragraph 104.

105.     In answer to paragraph 105 defendant Clements states that the prosecuting attorney's office was not open at night, that this was taken to the prosecutor the very next morning, after which Mr. Torres was released.  Detective Clements does not have knowledge of the time of the release but believes that the processing would have occurred quickly.

106.     Paragraph 106 is denied. As further response, Defendant Clements denies that she wrote any such note.

107.     In answer to paragraph 107 defendant Clements has no reason to believe that is true, but if it is, she has no knowledge of that, and so paragraph 107 is denied at this time

108.     Paragraph 108 is argumentative and so to that extent it is denied.  As explanation, it is stated that it is permissible to make a warrantless arrest as long as there is probable cause.  Court procedures are in place and prosecuting attorney procedures are in place to have judicial determination of probable cause if any detention is extended.  It is believed there was no extension in the case of Mr. Torres, he was investigated, he was given an opportunity to give a statement, and charges information was presented to the prosecutor based upon the probable cause and Mr. Torres was released.

109.     Whether or not Mr. Torres was charged with a crime is beyond the control of the police officer, who can only conduct an investigation and make an arrest based on probable cause, and here there clearly was probable cause.

110.     In answer to paragraph 110, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found.  Further, plaintiffs have not supplied any information regarding this in their disclosures.  As a result paragraph 110 is denied at this time.

111.     In answer to paragraph 111, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found.  Further, plaintiffs have not supplied any information regarding this in their disclosures.  As a result paragraph 111 is denied at this time.

112.     In answer to paragraph 112, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found.  Further, plaintiffs have not supplied any information regarding this in their disclosures.  As a result paragraph 112 is denied at this time.

113.     In answer to paragraph 113, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found.  Further, plaintiffs have not supplied any information regarding this in their disclosures.  As a result paragraph 113 is denied at this time.

114.     In answer to paragraph 114, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found.  Further, plaintiffs have not supplied any

information regarding this in their disclosures. As a result paragraph 114 is denied at this time.

115.      In answer to paragraph 115, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found. Further, plaintiffs have not supplied any information regarding this in their disclosures. As a result paragraph 115 is denied at this time.

116.      In answer to paragraph 116, defendants state that they have no knowledge of this at this time. Presently no report has been located of an arrest in November 2013, and no record of being processed can be found. Further, plaintiffs have not supplied any information regarding this in their disclosures. As a result paragraph 116 is denied at this time.

117.      In answer to paragraph 117, defendants state that plaintiffs did not supply any information regarding this in their disclosures. The record of the arrest of Mr. Liner indicates that there was a burglary, the police responded to the burglary, and then there was a disturbance at the scene of the burglary, and that Mr. Liner was at the scene, that Mr. Liner was given his Miranda warning and that Mr. Liner was arrested at the scene.

118.      In answer to paragraph 118, defendants state that plaintiffs have not disclosed information, and no documents have been found to determine if this is correct or not, and so paragraph 118 is denied at this time.

119.      Defendants deny paragraph 119 at this time and as grounds therefore state that plaintiffs have not disclosed this information in their disclosures, and according to the

records that counsel has now received, it appears that Mr. Liner was held for approximately 19 hours.

120. Paragraph 120 is denied.

121. Defendants deny paragraph 121 at this time and as grounds therefore state that plaintiffs have not disclosed this information in their disclosures, and according to the records that counsel has now received, it appears that Mr. Liner was held for approximately 19 hours.

122. Defendants move to strike paragraph 122 as argumentative. In the alternative paragraph 122 is denied because it is argumentative. From the information received in a report, it appears that Mr. Liner was arrested at the scene of a crime, that there was probable cause to arrest him at that time, and whether or not he was charged is beyond the control of these defendants, and has no relevance to whether there was probable cause to arrest him.

123. Defendants have no knowledge of paragraph 123 and deny same.

124. Paragraph 124 is vague because it says that someone alerted him that a wanted had been issued for him. But to try to answer this, it is true that someone had accused Mr. Liner of theft, and it is true that there was probable cause to believe that he had committed a theft, and it is true that a wanted was issued.

125. These defendants have no knowledge of paragraph 125 and so deny same at this time. Defendants note that this information has not been shared by plaintiffs in disclosures.

126.     These defendants have no knowledge of paragraph 126 and so deny same at this
time.  Defendants note that this information has not been shared by plaintiffs in
disclosures.

127.     These defendants have no knowledge of paragraph 127 and deny same at this
time.  Defendants note that this information has not been shared by plaintiffs in
disclosures.

128.     Defendants believe it is correct that Mr. Liner was held for 15 hours.

129.     Defendants deny that no one spoke to Mr. Liner until after 25 hours.  Defendants
admit only that an active investigation took place, that Mr. Liner spoke to the police,
denied that he had committed the offense, and that attempts to notify the victim met with
negative results, and so Mr. Liner was released.

130.     Defendants have no knowledge of what is said in paragraph 130 and so deny
same.

131.     Defendants admit that it appears that during course of the active investigation that
Mr. Liner was asked about his vehicle.

132.     Paragraph 132 is denied.

133.     Paragraph 133 is denied.

134.     Paragraph 134 is denied.

135.     These defendants have no knowledge of paragraph 135 and deny same.

136.     Paragraph 136 is argumentative and therefore is denied.  As further answer,
defendants state that there was probable cause for the arrest of Mr. Liner.

137.     Paragraph 137 is argumentative and is denied.

138.     Paragraph 138 is denied.

139. Paragraph 139 is denied.

140. Paragraph 140 is denied.

141. Defendants deny that plaintiffs are proper representatives of a class of plaintiffs, defendants deny that there was a lack of probable cause to arrest each of the plaintiffs. Defendants state affirmatively that with the Amended Complaint, it appears that Mr. Liner was arrested on a Wanted only once, and that Mr. Torres was arrested once, and that Mr. Furlow was arrested twice, and it now seems to be apparent that Mr. Furlow's attorneys were actively involved in that, and that with all plaintiffs there was clear probable cause for arrest, and that all plaintiff have misrepresented the facts, and have al misstated that St. Louis County police issued "Wanteds" without probable cause. For example plaintiff Furlow is alleging is that he can represent a class because, his wife, according to paragraph 20 "fabricated" a story by engaging in a ruse of crying and running to a neighbor's house, and acting distraught, and plaintiff is alleging that his wife made up a story that her husband had beat her up, and wrongly asked the neighbor to call the police, after which the police responded, took a statement that seemed to confirm what was said in the 911 call, and further even though his wife had indicated that she wanted to press charges, and even though the wife told the officer that her husband was on probation for a felony which is the reason that the high powered weapon loaded with 30 rounds of ammunition was placed in her name, and taking all of this plus her appearance into consideration that the officer wrongly made a judgment that probable cause to arrest exists, and then plaintiff refused to voluntarily turn himself in, and so the officer, taking all of this into consideration, issue a "Wanted" and plaintiff, on behalf of others similarly accused of Domestic Assault, wants to stop the practice because the

victim indicated by telephone that she now wishes to recant her statement, even when it is well known that victims of domestic abuse more often than not are pressured to recant their statements, and even though experts and advocates for abused women teach that the first statements made in domestic violence cases are usually accurate. As another example Mr. Furlow misrepresented that an officer called him on his cell phone, when the officer could not have possibly done so, and misreprented the facts of the case when in fact two people said that Mr. Furlow had committed a theft, one said he had committed an assault. Mr. Torres misrepresented that St. Louis County police had been called by an ex wife, and misrepresented that the police were called to investi in sexual misconduct of two children but in fact received a referral from the State of Missouri and did not tell the court in the Amended Complaint that there had been forensic interview by the State of Missouri that provided probable cause; and further, vague allegations were made by Mr. Liner, and no reports or other information have ever been disclosed by plaintiffs regarding Mr. Liner, or Mr. Torres or the first arrest of Mr. Furlow, and no documentation has been disclosed at all except for a vague reference to Missouri Highway Patrol database which does not involve the issues of this case, and a vague reference to a Missouri Census Data Center that does not involve the issues of this case.

142.     Paragraph 142 seems to be for informational purposes only and does not seem to require a response at this time.

143.     Defendants deny paragraph 143, because they are not members of a class of persons whose rights have been violated.

144.     Defendants deny paragraph 144.

145.     Defendants deny paragraph 145 and state affirmatively that in plaintiff's initial

disclosures none of this information was disclose, and further state affirmatively that

plaintiffs have no basis to state that there is a policy of St. Louis County to issue

"Wanteds" without probable cause to arrest, and plaintiffs have no basis to say that there

are "at least hundreds of individuals;" but as indicated at the beginning of the Answer,

plaintiff seems to be justifying his argument that the Fourth, Fifth and Fourteenth

Amendments are violated on a combination of his misrepresenting the facts of his

detention and combining that with his reference to a DOJ report pertaining to the City of

*Ferguson*, not St. Louis County, and to his reference to a citation from a 55 year old law

review article from a Kansas City law school that references "agencies in Missouri," not

specifically St. Louis County.

146.     Defendants deny paragraph 146.

147.     Defendants deny paragraph 147 including all subsections.

148.     Defendants deny paragraph 148

149.     Defendants deny paragraph 149.

150.     Defendants deny paragraph 150.

151.     Defendants deny paragraph 151.

152.     Defendants deny paragraph 152.

**COUNT I, CLAIM PURPORTED TO BE UNDER 42 U.S.C. §1983**

**AGAINST ALL DEFENDANTS EXCEPT FOR OFFICER PARTIN**

153.     Defendants incorporate their responses to paragraphs 1 through 152 as though

fully set out herein.

154.     Defendants deny any implication in paragraph 154 that there was not probable cause for the arrest of each of the plaintiffs, and deny any implication that the plaintiffs were held in violation of constitutional rights.

155.     In answer to paragraph 155, arrests in this case were caused when only when there was probable cause to believe that crimes were committed by these plaintiffs.

156.     Paragraph 156 is argumentative and therefore is denied. In each situation involving each plaintiff, there was probable cause to arrest each plaintiff.

157.     Paragraph 157 is argumentative and is therefore denied. In each situation involving each plaintiff there was probable cause to arrest each plaintiff. After each arrest there are court procedures in place for determination of probable cause, ther are prosecuting attorney procedures and policies in place, but as far as St. Louis County police officers and these plaintiffs are concerned, there was always probable cause to believe these plaintiffs committed crimes or municipal ordinance violations.

158.     Paragraph 158 is argumentative and is therefore denied. In each sit

159.     In answer to paragraph 159, there was is no basis to allege malice on the part of the police officers who have been named, who in fact showed compassion and empathy for victims of crime, and acted professionally and politely to these plaintiffs at all times. But with regard to malice, it has become apparent that plaintiffs' attorneys have been active participants in the civil prosecution of at least the police officers who arrested Mr. Furlow, and this civil prosecution is without merit, and it will have to be determined someday, in their individual capacities whether these active participants acted with malice.

160.     Defendants deny paragraph 160.

161.     Defendants deny paragraph 161.

162.     Paragraph 162 is vague and to that extent it is denied, although it is admitted that all individual officers named acted pursuant to policy, and did so properly.

163.     Defendants deny paragraph 163 for reasons already stated in this answer demonstrating that plaintiffs have misquoted the policy or have taken parts of the policy out of context or have mixed MULES and Wanteds.

164.     Defendants deny paragraph 164.

165.     Paragraph 165 is argumentative and is denied. It is repeated that the policy is to issue Wanteds only when there is probable cause to arrest, and in this case there clearly was probable cause to arrest each plaintiff.

166.     Paragraph 166 does not make sense, or in the alternative it is argumentative. For these reasons paragraph 166 is denied.

167.     Defendants deny paragraph 167.

168.     Defendants deny paragraph 168.

169.     Defendants deny that plaintiffs have a right to prevail.

**Count II, duplicatively filed pursuant to 42 U. S. C. §1983**

170.     Defendants incorporate their responses to paragraphs 169 above as though fully stated herein.

171.     Paragraph 171 is vague. It seems to be saying that Officer Walsh attempted to talk to Mr. Furlow and Detective Clements attempted to talk to Mr. Torres. If this is what plaintiffs are alleging then paragraph 171 is admitted. If anything else is alleged, it is denied.

172.     Paragraph 172 is vague.  It seems to be saying that Mr. Furlow told Officer Walsh that he would invoke his 5th Amendment right.  That is not true and it is denied.  Officer Walsh was with the victim gathering the evidence and he spoke to a voice and asked the voice to appear in person to discuss this, and the voice, which presumably was Mr. Furlow said that his attorney had already told him not to come talk to him.  The invoking of the 5th Amendment was later made to a different officer on a different date.  It seems that this paragraph is also saying that Mr. Torres invoked his 5th Amendment right to Detective Clements.  Note that this allegation contradicts Mr. Torres earlier allegations that he would be happy to talk to the detective with his attorney present.  Only after Mr. Torres was arrested did he invoke his 5th Amendment right, and when he did so, his right was respected.   So paragraph 172 is denied.

173.     Paragraph 173 is denied.  Reference is made to paragraph 172 above.

174.     Defendants deny paragraph 174.  Not only do they deny this paragraph but state that there is no basis for this allegation, and that at some future time it will have to be determined whether the active participants of the civil prosecution of these defendants themselves acted with malice when making these meritless allegations.

175.     In answer to paragraph 175 defendants deny any implication that 5th amendment rights were violated.  Plaintiffs were read their Miranda warnings and the responses of plaintiffs were respected.  Any implication that this is wrong is denied.

176.     In answer to paragraph 176 defendants deny implication that 5th amendment rights were violated.  Plaintiffs were read their Miranda warnings and the responses of plaintiffs were respected.  Any implication that this is wrong is denied.

177.     Paragraph 177 is denied.

178.     Paragraph 178 is denied.

179.     Paragraph 179 is denied.

180.     Paragraph 180 is denied.

181.     Paragraph 181 is vague and calls for speculation as to what plaintiffs are referring to and on that basis is denied. If plaintiff are alleging that Officer Walsh and Detective acted pursuant to policy to arrest based on probable cause and to respect 5th amendment rights or and to follow the policy pertaining to wanted, then it is admitted that they followed policy and they did so properly.

182.     Paragraph 182 is denied.

183.     Paragraph 183 is vague and argumentative and as such is denied. It is admitted that Jon Belmar is chief of police.

184.     Paragraph 184 is denied.

185.     Paragraph 185 is denied.

186.     Paragraph 186 is vague and is argumentative and so it is denied.

187.     Defendants deny paragraph 187.

188.     Defendants deny paragraph 188. For further answer, rather than punitive action, Officers Walsh showed empathy and concern for victims of crime while at the same time treated Mr. Furlow and Mr. Torres with respect and professionalism. Officer Partin did also but this count does not pertain to Officer Partin.

189.     Defendants deny that plaintiff should prevail

**COUNT III DUPLICATIVELY PURSUANT TO 42 U.S.C.§1983**

190.     Defendants incorporate as though fully set out herein their responses to paragraphs 1-89 above.

policies of St. Louis County that was allegedly unconstitutional; plaintiff does not allege that a specific unconstitutional policy or policies caused officers to commit unconstitutional acts.

2. For further answer and defense Chief Jon Belmar states that he is being sued only in his official capacity, which is considered the same as a lawsuit against the governmental entity, and as such plaintiff has not stated a claim upon which relief can be granted for the same reasons that plaintiff has not stated a claim against St. Louis County.

3. Plaintiff has failed to state a claim against Officer Kevin Walsh under 42 U.S.C. 1983 upon which relief can be granted because a careful reading of plaintiff's complaint demonstrates that there was probable cause for arrest of plaintiff even though plaintiff wishes to assert in his Complaint that when the apparent victim of a domestic assault recants the claims of domestic assault in a telephone call that probable cause should cease, and that the earlier events should not be considered in determining probable cause.

4. Officer Walsh had probable cause to arrest plaintiff because probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense had been committed.

5. Officer Partin had probable cause to arrest Mr. Furlow because not one but two people identified him and indicated that he had stolen a cell phone camera as the victim was recording Mr. Furlow's son, and one of these witnesses said that she had been assaulted and there was a visible mark on her.

6. Detective Clements had probable cause to arrest Mr. Torres because a forensic interview in a neutral background in social work was performed without leading questions, and a victim in the forensic interview indicated sexual abuse performed by Mr. Torres.

7. Although plaintiff Mr. Liner was vague, the allegations made by him were misstated at times. For example he was at the scene of a burglary and a disturbance and there was probable cause to arrest him there. Another vague arrest mentioned to him had probable cause because he had been identified in a theft.

8. Probable cause for a warrantless arrest exists when police have knowledge of facts and circumstances warranting belief by a prudent person that an offense has been committed by the person arrested.

9. For further answer defendant Officer Kevin Walsh, Officer Partin and Detective Clements state that they are entitled to the defense of qualified immunity. An officer is entitled to qualified immunity for a warrantless arrest whenever the arrest is supported by at least arguable probable cause. Further, probable cause to arrest exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the defendant has committed an offense. Further, arguable probable cause exists even where an officer mistakenly arrests a suspect believing it was based on probable, if the mistake was objectively reasonable. Whether a law enforcement officer had probable cause at the time of arrest is a question of law.

10. For further answer and defense to the claims filed against Officer Walsh, Officer Partin and Detective Clements state that under 42 U. S. C. § 1983, they are protected by the doctrine of Qualified Immunity because their actions did not violate any clearly established constitutional or statutory rights of which the defendant should have known.

11. For further answer and defense defendants state that §544.216 R.S. Mo. allows law enforcement officers in the State of Missouri to arrest without warrant any person that

such officer has reasonable grounds to believe has violated any ordinance or law including a misdemeanor or infraction.

12. For Further answer and defense §544.170.1 R. S.Mo. requires that persons arrested without a warrant shall be discharged from custody within twenty four hours unless charged with a criminal offense.

13. Plaintiff has not factually stated a claim for punitive damages upon which relief can be granted against Officer Walsh or Officer Partin or Detective Clements among other reasons because plaintiff Furlow has alleged a domestic assault had been reported, and that it was investigated in person, but alleging that a recanting by telephone does not show an evil motive or intent or outrageous or malicious conduct on the part an individual police officer who relies on what he saw and heard in person, and Officer Partin merely showed up at a fight, tried to sort it out, then learned that there was both an assault and a theft, and had two witnesses identify Mr. Furlow. Detective Clements received a referral from the state, received probable cause in the form of a forensic interview. Plaintiffs havee not stated a claim for the alleged "retaliation" because plaintiffs' own pleadings at times are contradictory, and other times do not ring true that a police officer read Miranda rights over the telephone and then issued a Wanted, and in all cases the Miranda warning was given after the plaintiffs were arrested, and so it could not be retaliation, but in any case plaintiff's own pleadings at the very least demonstrates arguable probable cause for arrest, and if arguable probable cause exists then there is not evil motive or intent or outrageous malicious conduct.

14. For further answer, defendans request bifurcation of the punitive damage claims pursuant to Rule 42 (b) FRCP.

15. For further answer and defense defendants states that punitive damages violate the equal protection afforded by the Fourteenth Amendment of the Constitution of the United States, and Article I, §§ 10, 18 (a) and 19 of the Missouri Constitution.

16. It does not appear that plaintiffs have requested punitive damages against St. Louis County, and Jon Belmar in his official capacity, but if somehow this could be construed that they have, Federal Law does not allow punitive damages against Counties and municipalities and by extension and by extension those sued in their official capacity.

17. Defendants request to be granted a right to file additional affirmative defenses as the evidence becomes known.

**WHEREFORE**, having fully answered Defendants Jon Belmar, County of St. Louis, Missouri, and Officer Kevin Walsh , Officer Christopher Partin and Detective Laura Clements move this Court to enter judgment in their favor at plaintiffs' costs, and for such other relief that the Court deems just under the circumstances, including whatever is deemed appropriate for the meritless allegations.

PETER J. KRANE
COUNTY COUNSELOR

/s/ Michael E. Hughes
Michael E. Hughes     #23360MO
Associate County Counselor
Mhughes2@stlouisco.com
41 So. Central Avenue, 9th Floor
Clayton, MO. 63105
314-615-7009; Fax 314-615-3732
Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served electronically via this Court's Electronic Filing System to all counsel of record this 29th  day of July , 2016
/s/   Michael E. Hughes