# Exhibit 45

July 16, 1984

## LAW ENFORCEMENT POLICY ADVISORY COMMITTEE - LEPAC

I. <u>INTRODUCTION AND BACKGROUND</u>

The Law Enforcement Policy Advisory Committee, better known and hereinafter referred to as LEPAC, was formed by the REJIS Commission in 1974. The basic purpose of the Committee is to provide for a formal, regular means for the law enforcement community to have input into REJIS operations.

The actions of the Committee are governed by a set of by-laws which are approved by the Commission. A copy of these by-laws are attached. The Committee currently consists of eight members who are to be representative of the REJIS law enforcement user community.

II. <u>MEETING PREPARATION AND DETAILS</u>

A. <u>Meeting Details</u>

The Committee regularly meets on the first Thursday of the odd-numbered months (January, March, May, July, September, November) at 12:00 noon in the 5th floor conference room in the REJIS Building. Special circumstances may change the date, time, and/or location of the meeting. Additionally, from time to time, special meetings may be called in addition to the regular meetings.

Since the regular meetings are held at 12:00 noon, REJIS provides a box lunch for all LEPAC members, their guests, the REJIS General Manager, Staff Support person, and Secretary providing secretarial support at the meeting.

Secretarial support at this point includes the following:
1. Making sure the appropriate room is reserved for the meeting
2. Ordering, pickup, and placement of lunches in the meeting room
3. Set-up of meeting room (normally the regular configuration of table and chairs is used, occasionally something special is required) which includes placement of nameplates, preparing coffee, distribution of any last minute handouts, and placement of tape recorder to record the meeting.

B. <u>Agenda Preparation</u>

The staff support person is responsible for the preparation of the agenda. Normally, this is started 2½ weeks before the scheduled meeting date. The agenda is scheduled to be mailed to the members on Friday, 13 days before the meeting.

The appropriate staff support person is responsible for preparing the draft of the agenda tabs, securing appropriate attachments, and preparing the draft agenda.

Secretarial support at this point includes the following:
1. Typing agenda and related tabs (NOTE: Examples of Agenda and Tab formats are attached)
2. Proofing

LEPAC Meeting Procedures
July 16, 1984
Page 2.

  3.  Duplication of agendas and supporting material
  4.  Distribution of agendas to members and appropriate REJIS personnel
  5.  Mailed with the agenda is a post card to be marked by the member/guest indicating if they will be in attendance and their luncheon choice.  Post cards should be marked to the attention of the secretary providing support and should have the initials of the person to whom it was sent, since they frequently are returned unsigned.

C.  Pre-meeting Activities

Prior to the meeting, but after the agendas are mailed, the secretarial support person monitors the return of the luncheon post cards.  The day before the meeting the secretary should contact any persons who have not returned their post card to determine if they are coming, and what their lunch order is.

The staff support person should be advised of who is coming and who is not.  The secretary can then order the appropriate number and kinds of lunches (don't forget REJIS personnel that get lunches).

D.  Meeting Activities

During the meeting the staff support person is responsible for supporting the chairman as he conducts the meeting.  This will include presentation of agenda items or securing additional information.

Secretarial support at that point includes the following:
  1.  Operation of tape recorder to make sure the meeting is recorded
  2.  Taking shorthand/longhand notes of the major events that occur during the course of the meeting
  3.  Distributing any items not previously distributed.

E.  Post Meeting Activities

The staff support person shall identify any assignments that my have originated from the meeting, and takes the necessary action to follow up on these issues.  Additionally, the draft minutes will be reviewed and finalized.
Secretarial support at this point will include the following:
  1.  Meeting room clean up - collect extra no longer needed copies of memos, etc., return coffee pot to storage, etc.
  2.  Preparation of draft minutes from tape and hand notes, and final copy after review by staff support person.
  3.  Preparation of memos, letters, etc. as may be directed by staff person involved in follow-up activities.
  4.  Maintenance of appropriate files:
     a. LEPAC Correspondence - copies of all letters or memos from Chairman or other documents as may be directed by staff support person.

LEPAC Meeting Procedures
July 16, 1984
Page 3.

      b.  Agenda Sheet File - loose leaf notebook containing the agenda "front sheet" in date order

      c.  Minutes File - contains a copy of the approved minutes in a loose leaf notebook in date order

      d.  Agenda Packet File - contains the original of the entire agenda - front sheet, tabs, and all attachments and handouts in meeting date order.

## III. SUMMARY

1. The staff support person is responsible for assembling items to be included on the agenda.  This process begins seventeen (17) days before the meeting, when the staff support person begins to draft the agenda and supporting tabs.

2. When the draft is completed, it is given to the secretarial support person for typing.

3. The typed draft is returned for review and any changes.

4. Thirteen (13) days before the meeting, the completed agenda is to be mailed along with a return post card to indicate intention to attend the meeting and lunch preference.

5. One (1) day before the meeting, the secretary contacts those who have not returned post cards; notifies staff support person of individuals not planning to attend the meeting; orders lunches.
     (NOTE: Don't forget lunch choice for REJIS personnel).

6. Day of the meeting, pick up lunches, set up meeting room, take tape and manual notes, "cleans up" meeting room.

7. Day after meeting - staff support person initiates follow-up action as may be required from the meeting.  Also drafts summary of meeting for Commission Agenda.

8. Within 10 days after the meeting, the secretary completes a draft of the meeting minutes; has updated files.

9. Staff support person reviews minutes draft, makes appropriate changes within three (3) days.

10. Secretary revises minutes draft, provides final copy to staff support person for inclusion on next agenda, and gives copy to Administrative Assistant for attachment to next Commission Agenda.

Attachments:
1. Sample agenda format
2. Sample agenda tab format
3. Sample minutes format
4. Post card sample
5. Lunch ordering procedures
6. Agenda distribution list
7. By-laws

**L**aw

**E**nforcement

**P**olicy

**A**dvisory

**C**ommittee

Date & Time: Thursday, May 3, 1984 - 12 Noon

Place:          5th Floor Conference Room

Parking:       Visitor Spaces and Street

# AGENDA

Col. Kenneth A. Krueger
Chairman
Chief
City of Ladue Police Dept.

Col. James P. Damos
Vice Chairman
.ef
University City Police Dept.

Col. John F. Berner
.ef
St. Louis Police Dept.

Col. Gilbert H. Kleinknecht
Superintendent
St. Louis County Police Dept.

Major Ronald Battelle
Executive Director, Division
of Auxiliary Services
St. Louis County Police Dept.

Lt. Col. William E. Brown
Assistant Chief of Police
St. Louis Police Dept.

Col. Elwyn L. Chapman
Chief
St. Peters Police Dept.

Sheriff Mearl J. Justus
Clair County, Illinois

I.    Call to Order

II.   Approval of Minutes

III.  Chairman's Report
      a.  Letter to Major Little

IV.   Old Business
      a.  Law Enforcement Systems Review Status    TAB A
      b.  Wanted Purge                             TAB B
      c.  Mandatory Training/Certification         TAB C

V.    New Business
      a.  Access Request - U.S. Postal Inspector   TAB D
      b.  Planning Meeting - Dept. of Corrections  TAB E
      c.  1st Annual MULES Conference              TAB F

VI.   Adjournment

REJIS

ITEM NAME:                                                TAB _____C_____

   Mandatory Training/Certification
                                              ┌──────────────────────────
                                              │ STAFF PERSON ASSIGNED
                                              │    Bob Jauer

SUBMITTED FOR:

[ ] Approval/Disapproval

[ ] Information

[X] Discussion for Staff Direction

[ ] Other

SUMMARY:

As directed I have been in contact with the MSHP and KCPD regarding their plans for mandatory training/certification. Major Max King, KCPD has advised that they have no current plans to implement a mandatory training/certification program although they do recognize the need and support the concept. Mr. Charles Floyd, MSHP has advised that they have under consideration a mandatory training policy. A copy of the draft was provided and is attached for your review.

The document provided is divided into four sections. First are the proposed changes to the MULES manual. Second is the proposed change to the Users Agreement. Third are proposed changes to the MULES Terminal Site Security Standards. The fourth section is general information about how the program would be implemented.

Review of this information raises two topics. The first is a possible improvement in wording of the draft presently under consideration by LEPAC. The second is a series of policy level issues on which the MSHP and LEPAC proposals do not agree.

First is the revised wording of the LEPAC draft. Upon review I felt that section 2.6 could be improved by using language that was in the MSHP draft. Attached is a copy of the proposed LEPAC policy. The section of 2.6 enclosed in () is intended to be deleted and replaced by the material immediately following which is underlined.

Second are the policy level issues that need to be discussed and agreement reached These issues are as follows.

STAFF RECOMMENDATION:
   (including motion if appropriate)

That the Committee discuss the areas of differences with the proposed MULES training policy and the proposed revision of section 2.6 to provide direction for the staff,

1.  The proposed MULES policy calls for mandatory training. The proposed regional policy calls for mandatory certification. Regionally it is proposed that the important point is passing the final test which is divorced from mandatory attendance at classes.

2.  The proposed MULES policy calls for all training to be done by Communications staff of the Patrol. The proposed regional policy only requires that the final testing be done by REJIS personnel. The actual training can be done by REJIS personnel, specially trained agency personnel of self taught as the emphasis is on demonstrating that the information is known.

3.  The proposed MULES policy calls for all operators to receive certification. The proposed regional policy calls for certification based on function and need, i.e. someone only doing arrest inquires is only certified in that while in MULES the operator is certified in inquiries and updates in all systems.

4.  The proposed MULES policy does not require renewal. The proposed regional policy calls for renewal every 3 years.

5.  The proposed MULES policy requires all terminal operators to have either regular or provisional certification. The proposed regional policy only mandates certification when use of a controlled system is an integral part of their duty assignment. Non-controlled system usage and casual operators are excluded from certification requirements.

6.  The proposed MULES policy allows provisional certification for new operators for up to 12 months. The proposed regional policy requires certification for new operators to be obtained within 6 months.

7.  Since there are considerable differences, both in content and approach, in these proposals if after discussion there still is not complete agreement which position takes precedence for the regional training program?

Law Enforcement Policy Advisory Committee
Meeting Minutes
March 1, 1984

Members Present:    Col. Kenneth A. Krueger, Chairman; Col. James P. Damos;
                    Major Ronald Battelle; Col. Elwyn Chapman; Lt. Paul
                    Herman; Mr. Julius Turner

Others Present:     Mr. Dennis Lay (proxy Lt. Col. Brown); Mr. Bruce
                    Morrison (proxy for Sheriff Justus); Capt. Ralph Tackes;
                    Mr. Jerry Lovell and Capt. J. M. Luker, MSHP; Sgt. Don
                    Richardson; Mr. Paul Newhouse; Mr. Robert Jauer; Mr. Joe
                    Kennedy; Ms. Patti Bretscher

## I.   Call To Order

The meeting was called to order by Col. Krueger, Chairman, at 12:20
p.m.

## II.   Approval Of Minutes

Section C of the New Business portion of the minutes from the November
3, 1983 meeting were approved as submitted. The minutes of the January
5, 1984 meeting were reviewed. It was noted that the names of the
persons attending had been omitted. With this correction the minutes
were approved.

## III.   Chairman's Report

Col. Krueger reported that Chief James Burke had been named to assist
himself on the Board of Governors Communications Subcommittee which
reports on LEPAC and 911 issues. Col. Krueger also read letters from
Chief Berner and Lt. Col. Brown of the St. Louis Police Department
naming Lt. Paul Herman as the authorized designee for Chief Berner and
Mr. Dennis Lay as a standing proxy for Lt. Col. Brown. It was also
reported that the Board of Governors had reviewed the issue of
forwarding all misdemeanor warrant records to the MULES computer.
After discussion the Board had voted in favor of the request from the
Highway Patrol to have these records forwarded.

## IV.   Old Business

### A.   Law Enforcement Conversion Project and Wanted System Purge

Phil Gaffney reported that C/P PAC had approved the proposed purge
rules as submitted in the revised draft. Further, that they
suggested that 60 days prior to an actual purge that the courts be
notified of the records to be purged. This would enable them to
take steps to keep the record active. After some discussion it
was agreed that this was a good idea. Lt. Herman then moved that
the purge rules as drafted be approved, however, implementation be
delayed until REJIS could present an implementation plan which
would include the advance notice feature. The motion was seconded
by Chief Damos and subsequently approved.

It was the consensus of the Committee that the purges of the hot files should continue according to the existing policy and procedures until such time as an implementation plan is approved.

During the discussion of the purge criteria it was noted that the purge rules for missing children differed from that established by MULES and NCIC. It was decided that the state NCIC representative should be contacted and notified of the position that LEPAC took on this issue and to recommend that this be put before the NCIC regions as a discussion topic.

Phil Gaffney also reported that on February 22, 1984 a post implementation meeting on the "hot file" conversion was held. Several problem areas were identified in the meeting and action has been taken to correct them. Enhancements were also identified and they will be considered at the time of the next systems release.

Fred Blank was introduced and it was announced that he would be project leader on the next phase, arrest conversion. Fred reported that the project team was just beginning the data collection and review of the existing system phase.

B. Mandatory Training/Certification

Bob Jauer reported that from preliminary indication there are perhaps 2200 individuals that will require certification. The staff is currently working on a plan for implementation and will be in contact with the MSHP and KCPD to make sure the training plans are consistent.

There was some discussion of the draft policy and the need for different levels of certification. It was decided that certification should be based on need, thus requiring certification by subject, not function, e.g. all inquiries.

V. New Business

A. New User Request - St. Louis City Counselor

The St. Louis City Counselor had requested of the REJIS Commission permission to become a batch user. Chief Damos moved to recommend that the City Counselor be approved as a new user. The motion was seconded by Major Battelle and subsequently approved.

B. Annual Security Audit

Joe Kennedy presented the report of the subcommittee pertaining to the physical security of the facility. Overall, security at the central site was found to be very good. The Committee accepted the report of the subcommittee for forwarding to the Commission.

C.   Release of Hard Copy

Chief Richard DeLargy, Meramec College Police appeared before the Committee to request a change in the existing LEPAC policy, relating to release of DOR hardcopy, or that an exemption be granted to his department.

After discussion Chief Chapman moved that no action be taken in this matter. The motion was seconded by Lt. Herman and subsequently approved with Chief Damos voting against the motion. Chief Damos explained that he felt the matter needed further study and review.

D.   Pending Legislation

The current status of SB493; HB1200; and HB1448 was given and a brief discussion ensued. No action was taken by the Committee with regards to these items.

E.   Agenda Add-Ons

Two items not included in the original agenda were presented. The first was the purge criteria for the ORION system and the second was a report from the Bureau of Justice Statistics.

Bob Crecelius distributed copies of the proposed ORION purge criteria and made a brief presentation. Members were asked to review the proposal and if comments were in order to make them prior to March 13.

Chief Damos distributed copies of the Bureau of Justice Statistics Report of the Director, January 1984. He requested that the document be reviewed and any questions or comments to be made at the next meeting.

VI.   Adjournment

The next meeting was scheduled for Thursday, May 3, 1984. The meeting was adjourned at 2:15 p.m.

SAMPLE POST CARD
(Paper clip to top of Agenda)

FRONT

Old Post Office
St. Louis, Missouri     USA 13c

Historic Preservation

REJIS Commission
4255 West Pine Blvd.
St. Louis, Missouri 63108

1)    ATTN: Secy's. Name
© USPS 1982

2)                         LEPAC                         BACK

Please return this card at least 3 days prior to the
scheduled meeting date.

This is to notify you that I ___will/___will not
3)    attend the meeting on ___Day & Date_____, 19___,
4)    at ___12 Noon_____.

                Signed: _____

P.S. I would prefer for lunch
5)              Sliced                Roast
         _____Turkey          _____ Beef
      Beverage: _____

Attending for/or in
addition to me: _____

6)                                                    XXX

Legend: 1) Secretary's name on front of card
        2) Name of Meeting
        3) Write out Day, Month, Day (numeral), Year
        4) Time of meeting
        5) Lunch preference (Member writes beverage preference in)
        6) Initial of member to whom sent (written in)

## LUNCH ORDERING PROCEDURES

After post cards have been returned from members (or phone calls made to those who have not returned the card), lunches are ordered the day before the meeting date.  Lunches for LEPAC meetings are ordered from the

Salad Bowl (Millie)
3949 Lindell
535-4274

As indicated on the post card, two types of sandwiches are offered; sliced turkey is always on the menu and roast beef or ham/cheese offered alternately.  (Designate homemade sandwich buns w/lettuce/mayo.).  Potato salad, or another type of salad and dessert (usually cake or pie) make up the box lunch.  Members designate their choice of non-alcoholic beverage.

Lunches are ordered to be picked up at 11:15 the day of the meeting. If the maintenance man is available he may pick up the lunches and deliver them to the 5th floor conference room.  If he is not available, the secretary picks up the lunches.  A tax-exempt receipt is signed by the individual picking up the lunches.

The conference table is set up with name cards, and a place mat is put at each place.

Members eat from 12 noon until about 12:30 before the formal meeting begins.  As members are finished eating,        the secretary usually removes the boxes and debris from the table, before the start of the meeting.

After the meeting, the secretary prepares a purchase requisition for the lunches/beverages with the signed receipt attached and given to Finance Office.

7/16/84

<u>AGENDA DISTRIBUTION LIST</u>

Original - to file
Copies - 18

<u>Internal</u>

    General Manager (Newhouse)
    Staff Support Person (Jauer)
    Telecommunications - John Watson
    Route 1 - User Services
    Route 1 - All Directors
    Public Services Administrator (Meyer)

<u>External</u>

Col. Kenneth A. Krueger, Chairman
Ladue Police Department
9345 Clayton Road
Ladue, MO  63124
993-1214

\* Col. James P. Damos, Vice Chairman
University City Police Department
6801 Delmar Blvd.
University City, MO  63130
862-4555

Major Ronald A. Battelle
Executive Director
Division of Auxiliary Services
St. Louis County Police Dept.
7900 Forsyth
Clayton, MO  63105
889-2281

Col. Elwyn L. Chapman, Chief
St. Peters Police Department
275 Baltezor
St. Peters, MO  63376
278-1122

Sheriff Mearl J. Justus
St. Clair County Sheriff's Office
10 Public Square
Belleville, ILL  62220
(618) 277-3500
(Undersheriff Bruce Morrison)

Lt. Paul Herman, Commander
Planning & Development Division
St. Louis Police Department
1200 Clark Ave.
St. Louis, MO  63103
444-5636
(proxy for Col.John F.Berner)

Mr. Julius Turner, Director
Bureau of Data Systems
St. Louis County Police Dept.
7900 Forsyth Blvd.
Clayton, MO  63105
889-2826
(Proxy for Col.G.H.Kleinknecht)

Lt. Col. William E. Brown
Asst. Chief of Police
St. Louis Police Department
1200 Clark Ave.
St. Louis, MO  63103
444-5624

\*\* Mr. Dennis Lay, Manager
Systems Development
St. Louis Police Department
1200 Clark Ave.
St. Louis, MO  63103
444-5642
(Proxy for Lt. Col. Brown)

Sgt. Donald Richardson
Planning Section
St. Louis Police Department
1200 Clark Ave.
St. Louis, MO  63103
444-5637

External Distribution List
Page 2.

     Major John Little
     Missouri State Highway Patrol
     P.O. Box 569
     Jefferson City, MO  65102

 * Receives two copies of agenda
** Always send Col. Brown & Mr. Lay a copy

BY-LAWS OF

THE LAW ENFORCEMENT POLICY

ADVISORY COMMITTEE OF REJIS

## ARTICLE I

### Name

The name of this committee shall be the Law Enforcement Policy Advisory
Committee to the REJIS Commission.  The acronym LEPAC may be used to identify
the Committee.

## ARTICLE II

### Objective

The objective of the Committee shall be to provide advice and
recommendations to the REJIS Commission on policy issues affecting the law
enforcement users of the network and/or relating to law enforcement
information maintained on the network.

## ARTICLE III

### Members

Section 1.  The members of the Committee shall be appointed by the REJIS
Commission and shall number eight (8).  Members of the Committee shall serve
at the pleasure of the Commission, but not for a period in excess of two years
unless reappointed provided that a successor is named.  Until a successor is
named, each member shall serve until his/her successor is duly appointed.  In
the event that a position becomes vacant prior to the end of a term, the
Commission shall by appointment fill the vacancy for the unexpired term.

Section 2. Members will be appointed to represent a specific group of law enforcement users. While the membership appointments are based on a grouping of agencies, the Committee recommendations should reflect that of the law enforcement user community as a whole. Not less than biannually the distribution of members to the specific groups shall be reviewed. The number of representatives per group may be adjusted after this review so that the Committee is reflective of the law enforcement community served. Factors to be considered in the review shall include, but not be limited to: usage of REJIS services, e.g., transaction counts and batch usage; REJIS user fees paid; number of commissioned officers; total law enforcement related budget; and, population of the areas served by that group.

Section 3. The membership of the Committee shall be as follows:

| | |
|---|---|
| St. Louis Metropolitan Police Department | 2 Members |
| St. Louis County Police Department | 2 Members |
| Municipal Police Departments in St. Louis County | 2 Members |
| Sheriffs and Municipal Police Departments in Franklin, Jefferson and St. Charles Counties | 1 Member |
| Sheriff and Municipal Police Departments in Illinois | 1 Member |

Section 4. With the exception of the second representative from the St. Louis City and St. Louis County Police Departments the member shall hold the position of Chief of Police, Superintendent of Police, Director of Public Safety (for those with combined police/fire departments) or Sheriff.

Section 5. The Chief of Police of the St. Louis Metropolitan Police Department and the Superintendent of the St. Louis County Police Department may appoint an "authorized designee" to participate in LEPAC functions on their behalf. The authorized designee shall be considered a member unless the regular members is in attendance.

3

Section 6. If a LEPAC member or authorized designee is unable to attend a regular or special meeting of the Committee or any subcommittee that they may be appointed to, they may send a proxy in their stead. Such proxy may participate in all discussions but shall not be able to offer or second any motion or cast a vote in any issue. Proxies shall be selected by the member/authorized designee that will be absent, however, they must be from the same representative area and have substantially the same or equivalent grade or rank as the member/authorized designee.

Section 7. The member/authorized designee when unable to attend a meeting shall advise the chairman in writing that he will not be in attendance and identify the individual that will serve as the proxy. This notification shall be made prior to the commencement of the meeting.

## ARTICLE IV

### Officers

Section 1. The officers of the Committee shall be a chairman, and vice-chairman.

Section 2. The office of Chairman shall be filled by a majority vote of the members and shall serve a two-year term.

Section 3. The office of Vice-Chairman shall be filled by a majority vote of the members and shall serve a two-year term.

Section 4. The term of office for the Chairman and Vice-Chairman shall begin at the close of the meeting at which they are elected.

## ARTICLE V

### Duties of Officers

Section 1. The Chairman shall preside at all LEPAC meetings and appoint all subcommittees. The Chairman shall also represent the Committee at REJIS

meetings when appropriate.  The Chairman may delegate responsibilities related
to representing the Committee.  The Chairman shall be empowered to vote on any
issue.

Section 2.  The Vice-Chairman shall in the absence or disability of the
Chairman perform all duties and exercise all powers of the Chairman and shall
perform such other and further duties as may from time to time be assigned to
him by the Chairman.

## ARTICLE VI

### Meetings

Section 1.  Regular meetings of the Committee will be held on the first
Thursday of the odd-numbered months at 12:00 noon.  The Chairman may
reschedule a meeting for good cause.  Unless specified otherwise, regular
meetings will be held at the REJIS offices.

Section 2.  Special meetings may be called by the Chairman or a majority
of the members of the Committee.  They may be held at any time or location as
may be required in order for the Committee to discharge its duties.

Section 3.  Written notice of the time, place, and purpose of regular,
and of all special meetings shall, unless waived, be delivered to every member
of the Committee not less than five days nor more than fifteen days prior to
the date of such meeting.  If such notice is mailed, it shall be deemed
delivered when deposited in the United States mail addressed to a member at
his address as it appears on the records of the Commission.

Section 4.  Subcommittee meetings shall be scheduled as required by the
chairman of the subcommittee.  Adequate notice shall be provided to all
subcommittee members regarding subcommittee meetings.

Section 5.  Meetings of the Committee shall be open to the public except
that meetings or portions thereof may be closed to the public under
circumstances as are authorized by the laws of the State of Missouri.

Section 6. A majority of the members of the Committee shall constitute a quorum for the transaction of any business at all properly called meetings. Proxies are not to be considered in determining whether a quorum is present at a meeting.

Section 7. Non committee members may participate in discussion or make contributions to the proceedings when appropriately recognized by the chairman.

Section 8. The current edition of Robert's Rules of Order, newly revised, shall govern the Committee in all cases not covered by these By-Laws or the Charter and By-Laws of the REJIS Commission.

## ARTICLE VII

### Approval and Amendment

Section 1. These By-Laws may be amended at any meeting of the Commission by a majority vote of the members in attendance and entitled to vote.

Section 2. The foregoing By-Laws of the Law Enforcement Policy Advisory Committee were adopted by the REJIS Commission at a meeting duly and legally convened this 17th day of March, 1983.

Chairman

ATTEST:

Secretary-Treasurer