# Exhibit 53

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DWAYNE FURLOW, RALPH TORRES and HOWARD LINER, individually and on behalf of all others similarly situated, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | No.: 4:16-cv-00254-CEJ |
| JON BELMAR, THE COUNTY OF ST. LOUIS, MISSOURI, and ST. LOUIS COUNTY POLICE OFFICER KEVIN WALSH, ST. LOUIS COUNTY POLICE OFFICER CHRISTOPHER PARTIN, ST. LOUIS COUNTY POLICE DETECTIVE CLEMENTS, and ST. LOUIS COUNTY POLICE OFFICERS JOHN DOES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) |  |

**EXPERT REPORT OF JEFFREY J. NOBLE**

1.    My name is Jeffrey J. Noble, and I make this report at the request of plaintiffs' counsel.

2.    I was a police officer in the City of Irvine for 28 years rising to the position of Deputy Chief of Police prior to my retirement.  I served as an interim Deputy Chief of Police at the Westminster Police Department for nine months.

   a.    I was a police officer for 28 years and retired in July 2012 as the Deputy Chief of Police with the Irvine Police Department, located in southern California.  As a Deputy Chief, I was directly responsible for all police operations including Patrol, Traffic, Criminal Investigations, Emergency Management, Crime Prevention, DARE, K9s, Training, and SWAT.  The City of Irvine encompasses over 70 square miles with a population of over 218,000.  I served in a wide range of assignments as an Officer, Senior Officer, Sergeant, Lieutenant, Commander and Deputy Chief, including Patrol, Traffic, Detective, SWAT, Training, Internal Affairs, Emergency Management and Crime Prevention.  The Irvine Police Department

1

had over 200 police officers and over 100 civilian employees during my employment with the department.

b. In April 2014, I was hired by the Westminster, California Police Department as an interim Deputy Chief of Police. My employment with the Westminster Police Department was by means of a temporary contract, and I was asked to review the department's Internal Affairs unit; department policies relating to Internal Affairs investigations, discipline and police officer conduct; conduct department audits and inspections; and act as a liaison with a civilian oversight monitor who was hired during the same period. My employment was at the request of the Chief of Police, was ratified by the City Counsel and was sought due to the arrest of a police Officer for an off-duty criminal sexual assault, the arrest of an on-duty Officer for extortion and a lawsuit filed by three Latino officers alleging discrimination and retaliation. I concluded this interim position in January 2015. The Westminster Police Department has 87 police officers and 40 civilian employees during my temporary contracted employment.

c. As a police supervisor and manager, I have extensive experience conducting internal administrative investigations on a wide range of issues including use of force, officer misconduct, criminal interrogations and interviews, harassment and sexual assaults.

4. I have a Juris Doctor degree, with honors, from Western State University College of Law and I am admitted to practice law in the State of California. I have a Bachelor's degree in Criminal Justice with an emphasis on Administration from California State University at Long Beach.

5. As a police consultant and expert witness, I have extensive experience on matters involving police investigative procedures, misconduct and corruption. For example:

a. In 2014, I was part of a Carnegie Institute of Peace Think Tank for addressing police use of force in developing countries.

b. I have consulted with other police organizations on a wide range of police practices, procedures, including criminal and administrative investigations. For instance, I was retained in 2004 as an expert to review and evaluate the internal investigation conducted by the San Francisco, California, Office of Community Complaints of the case widely known as "Fajitagate" involving the indictment of seven command staff members and three officers of the San Francisco Police Department. In 2007 and again in 2009, I was retained by the City of Austin, Texas to review the police department's internal homicide and Internal Affairs investigation of two officer-involved fatal shootings.

2

c.    I have been retained as both a defense and a plaintiff's expert in over 130 cases and have testified as an expert in state court in California, Washington, Tennessee, Connecticut, Minnesota and New Mexico and in federal court in Illinois, Tennessee, Georgia, South Carolina and California.  I have prepared expert reports for cases in the states of California, Washington, Pennsylvania, Georgia, Illinois, Tennessee, Idaho, Arkansas, Texas, Colorado, New York, Oklahoma, Connecticut, South Carolina, Florida, New Mexico, Minnesota, Ohio, Kentucky, Louisiana and Missouri.

d.    I have been retained in criminal cases involving allegations of criminal uses of force by police officers in the states of New Mexico, Delaware, Minnesota, Pennsylvania and Florida.

f.    I served as an independent policy advisor to the Large City Internal Affairs Project, which was funded by the United States Department of Justice.  This group consists of the 12 largest police agencies in the United States as well as a select group of independent policy advisors and academics.  The project was an effort to develop national best practices in internal investigations for police agencies.  I was the chair of a sub-committee whose efforts were focused on the investigation of allegations of officer misconduct.  Because of this project the COPS Office published a document entitled, "Standards and Guidelines for Internal Affairs: Recommendations from a Community of Practice."

g.    I have given presentations at the International Association of Chiefs of Police conference in 2004, 2009, 2012, and 2014; the national COPS conference on Internal Affairs issues and the Academy of Criminal Justices Sciences annual meeting on tactical reckless decision making in 2009; the American Psychological Association annual conference in 2013; and National Tactical Officers' Association annual conference in 2004.

h.    In 2013, I gave a presentation in Mexico at the request of the Mexican government on preventing corruption in police institutions.

i.    I have published 21 articles on policing which discussed the subject matters of: Internal Affairs, personnel issues, pursuits, use of force issues and investigative procedures.  Those articles are listed in my attached resume.

j.    I have published two chapters for policing textbooks on tactical recklessness and the code of silence.

k.    I have co-authored, along with Geoffrey Alpert, Ph.D., a textbook on police Internal Affairs investigations titled, "Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight."

3

l.    As evidence that the opinions in our book are accepted by other experts of police administrative investigations, my book was cited extensively in the COPS 2009 publication, "Building Trust Between the Police and the Citizens They Serve: An Internal Affairs Promising Practice Guide for Local Law Enforcement."

m.    I have used force during my career as a police officer, including deadly force.

6.    My experience, training and background are more fully described in my attached resume.

7.    My areas of expertise in policing include, but are not limited to: police use of force; pursuits; police administration; training; police operations; criminal investigations; interviews and interrogations; civil rights violations and investigations; internal/administrative investigations; criminal investigations; police discipline; citizen complaints; and police policies and procedures.

8.    I reviewed the following material in making my opinions:

- First Amended Complaint
- Saint Louis County Investigative Reports
  - 14-66436
  - 16-26685
  - 15-47656
  - 15-34472
  - 15-34382
  - 15-16866
  - 15-16858
  - 16-4447
  - 15-61723
- § 544.170 R.S. Mo. – Twenty hours detention on arrest without warrant
- § 544.216 R.S. Mo. – Powers of arrest
- Depositions
  - Juan Gomez
  - Laura Clements
  - Patrick Monahan
  - Peter Morrow
  - Kevin Walsh
  - Edward Schlueter
  - Christopher Partin
  - Jeff Burk
- Law Enforcement Policy Advisory Committee (LEPAC)

4

- o    Meeting Minutes – November 1, 2012
- o    Bylaws
- o    November 1, 2012 – Wanted Person File Purge Criteria
- o    May 7, 2015 – Stop Order Validation Process
- o    August 6, 2015 – "Wanted" Manual
- o    May 5, 2016 – "Wanted" Entry Change
- o    November 3, 2016 – "Wanted" Entry Change
- o    July 16, 1984 – LEPAC Procedures
- General Orders
  - o    September 13, 2011 – G.O. 11-26 – Teletype and REJIS Terminal Policy
  - o    July 15, 2015 – G.O. 15-26 – Teletype and REJIS Terminal Policy
  - o    September 14, 2016 – G.O. 16-26 – Teletype and REJIS Terminal Policy
  - o    March 16, 2016 – G.O. 16-37 – Case Management
  - o    December 22, 2010 – G.O. 10-37 – Case Management
- Transmittal Sheets
  - o    September 7, 2011 – G.O. 11-26
  - o    September 14, 2011 – G.O. 11-26
  - o    May 23, 2011 – G.O. 11-37
  - o    May 28, 2012 – G.O. 11-37
  - o    September 16, 2013 – G.O. 13-37
  - o    June 16, 2015 – G.O. 15-26
  - o    July 15, 2015 – G.O. 11-26
  - o    June 24, 2016 – G.O. 16-26
  - o    September 6, 2016 – G.O. 16-26
  - o    March 7, 2016 – G.O. 16-37
  - o    November 10, 2016 – G.O. 16-37
- March 4, 2015 DOJ report: Investigation of the Ferguson Police Department
- Fugitive Notification Form – Howard Liner
- Release
- St. Louis Metro Police – Prisoner Processing Copy – Howard Liner
- St. Luis County IJMS Inmate Short Profile - Liner

9.    At this point in the development of this case, I do not know whether I will be using any demonstrative aids during my testimony.  Should I decide to use any such aid, I will ensure that they are made available for review, if requested, prior to their use.

10.    My professional charges for this litigation work is an hourly fee of $295 plus expenses including all travel time.  My fees for deposition and trial testimony are $2,950 per calendar day or any portion thereof, plus travel time and expenses.

11.    The opinions that follow are made within a reasonable degree of certainty within the

5

field of police practices based on over 30 years of professional law enforcement experience and scholarship.

## Summary of Opinions

12.  In my 35 years of experience, I have never seen a practice similar to Wanteds used in any other Law Enforcement Agency.

13.  The purpose for and manner in which the St. Louis County PD uses Wanteds depart significantly from the well-established and generally accepted standards in policing.

14.  The policies, procedures, practices and training governing the use of Wanteds by St. Louis County Police Officers have created a serious and unreasonably high risk of constitutional violations by St. Louis County PD Officers. Although, documents and deposition testimony indicates the issuance of a Wanted requires probable cause, it is evident that probable cause is not uniformly present upon the issuance of a Wanted.

15.  The use of Wanteds by the St. Louis County Police Department is the functional equivalent of issuing arrest warrants without the use of a neutral magistrate to determine the existence of probable cause. Such a practice is inconsistent with generally accepted police practices.

16.  There are alternative strategies which the St Louis County Police Department could use to accomplish the same law enforcement goals it is purportedly trying to achieve through its Wanteds practice. Indeed, these alternative strategies are the practices that are routinely used by police agencies across the nation (*e.g.*, identifying phone callers by asking unique identifying questions or confirming their identity by a person who knows the caller; when possible record the telephone conversations; attempts to interview at home or work places; or seek an arrest warrant if there is probable cause).

17.  The warrantless arrests and/or subsequent detentions of the three named plaintiffs pursuant to Wanteds issued by the St Louis County were inconsistent with generally accepted police practices.

## Discussion

18.  The practice of Wanteds are unique to St. Louis County.

     a.  Police officers across the nation are trained that an arrest warrant is preferred but not required to make a lawful arrest under the Fourth Amendment. A warrantless arrest may be justified where probable cause and urgent need are

6

present prior to the arrest. Probable cause is present when the police officer has a reasonable belief in the guilt of the suspect based on the facts and information prior to the arrest. Police officers are trained that warrants are preferred because the process allows a neutral magistrate to review the facts and circumstances of an investigation to make probable cause determinations before a person is deprived of their liberty interests

b.    Generally, once an officer has made an arrest, the officer will seek a complaint be filed by the prosecutor for an appearance of the subject before a judge or the officer will release the subject on bond or a written promise to appear on a specific date. Indeed, the purpose of an arrest is to bring the arrested person before the court, not as a means to elicit a statement.

c.    The materials I have reviewed in connection with this case indicate that the true purpose of Wanteds is to provide an officer with an opportunity to further a criminal investigation by arresting a suspect in order to conduct a custodial interrogation.

1.)    Lieutenant Burk said he could only speculate, but believed Wanteds would allow an officer to complete their investigation by interviewing the suspect.[1]

2.)    Lieutenant Gomez said he could not think of any reason to enter a Wanted other than to conduct an interview.[2] Lieutenant Gomez said he has never seen exigent circumstances for the issuance of a Wanted.[3]

3.)    Lieutenant Morrow said the prosecutor requires an attempt to interview a suspect before they will entertain a warrant and the department uses Wanteds to attempt to gain an interview.[4]

4.)    Detective Clements said the purpose of a Wanted is to attempt to question a person suspected of a crime.[5]

5.)    Officer Walsh said the only purpose of a Wanted is to allow an interview.[6]

---

[1] Burk deposition at 23 and 28.
[2] Gomez deposition at 23 and 65.
[3] Gomez deposition at 136.
[4] Morrow deposition at 36.
[5] Clements deposition at 52-53.
[6] Walsh deposition at 56.

6.) Officer Schlueter said the only purpose of a Wanted is to try to conduct an interrogation.[7]

7.) Officer Partin said the purpose of entering a Wanted is to speak with the person involved.[8]

d. More troubling is that Wanteds are issued even after an officer has had an opportunity to speak with a person suspected of a crime, but the suspect has refused to speak with the officer, where the interview was not in-person, and where the officers know the address of the suspect but choose to enter a Wanted rather contacting the suspect at their home or office.

1.) Officer Partin said if he spoke with a person and they refused to talk or if he spoke with a person on the phone he would still enter a Wanted.[9]

2.) Detective Clements said Wanteds are often issued when officers know the suspect's home address.[10]

3.) Lieutenant Morrow said although there is no policy that an officer must speak with a suspect in-person,[11] there is no certainty whom an officer is speaking with on the phone,[12] so those individuals need to participate in a custodial interview.

4.) In the Furlow matter, Officer Walsh said Ms. Furlow initially picked up the phone and told him Mr. Furlow was on the line.  Officer Walsh said there was no reason not to believe he had spoken with Mr. Furlow, but he still issued a Wanted.[13]

e. Wanteds are the functional equivalent of an arrest warrant, except they are not signed by a judge.

1.) Officer Walsh said the only difference between a Wanted and an arrest warrants is the signature of a judge.[14]

---

[7] Schlueter deposition at 41.
[8] Partin deposition at 42 and 80.
[9] Partin deposition at 66-67.
[10] Clements deposition at 35.
[11] Morrow deposition at 38.
[12] Morrow deposition at 37.
[13] Walsh deposition at 124.
[14] Walsh deposition at 46.

8

2.)    Officer Walsh said it was his experience that a warrant would always be preceded by a Wanted and warrants were only issued for those in custody.[15]

3.)    The St. Louis County system of Wanted is identical to a warrant system. The Wanteds are computerized, available to officers in the field, and serve as the basis for arrest even by an officer with no knowledge of the case.

4.)    Like the National Crime Information Center (NCIC) , lengthy time frames are established to determine the validity of the Wanted.  Misdemeanor Wanteds remain valid for one year and felony Wanteds remain valid for three years.[16]

    a.)    The NCIC database is a national database maintained by the FBI. Among the data the is accessible in NCIC is the Wanted Persons system.  The Wanted Persons system maintains records on individuals for whom a felony or misdemeanor warrant is outstanding.

    b.)    The NCIC system does not include anything similar to a "Wanted" as it is used in St. Louis County.  To be entered in the national database, there must be a warrant approved by a magistrate.

5.)    However, unlike a warrant where a court has ordered the arrest of an individual, an arresting officer is relying on the probable cause determination by another officer who may not be working or even available to conduct an interview.  Moreover, unlike arrest warrants where arrestees are commanded to be brought to the court, Wanteds only serve an investigatory purpose of attempting to conduct an interview, even in cases where subjects have already invoked their Fifth Amendment rights.

6.)    Wanteds cannot be entered into a national database to inform officers of arrest warrants because Wanteds do not meet the criteria of an arrest warrant.  However, a local database has been formed expressly in inform officers of Wanteds and its operation is the functional equivalent of the

---

[15] Walsh deposition at 83.
[16] Gomez deposition at 61.

national database because a local database, REGIS, has been formed to serve this purpose of notifying police agencies of Wanteds and warrants and subject to arrest. But the problem is unlike a warrant, there has not been a judicial determination of whether there is probable cause for the warrant instead a Wanted is a police officer issued arrest warrant.

7.) While Wanteds are the functional equivalent of an arrest warrant, St. Louis County Assistant Prosecutor Monihan said he does not believe an officer could make a warrant determination and that one needs the skills and training of an attorney.[17] Mr. Monihan said a judge signing a warrant application serves an important safeguard of a suspect's rights.[18]

f.   Based on my experience and every resource with which I am familiar, an officer is expected to complete his or her investigation before invoking the power to arrest. As discussed above, there are several exceptions to this general principle, most notably when there are exigent circumstances that require an officer to effectuate an arrest before he or she can complete the investigation and apply for an arrest warrant.

g.   Wanteds, by their very nature, have allowed officers to arrest and detain individuals without a warrant in non-exigent circumstances as a normal step in conducting an investigation. I have never known a police department or jurisdiction to sanction the power to arrest and detain as a routine and required tool in conducting an investigation.

h.   Accordingly, the practice of Wanteds allowed for the arrest and detention of an individual specifically for the purpose of conducting an interview in violation of generally accepted police practices.

19.  St Louis County PD Wanted Policies, Procedures, Training Create Serious Risk of Constitutional Violations

a.   The County's Wanteds Policy and Training prior to 2015

1.) General Order 11-26 says nothing about probable cause being required to issue a Wanted

---

[17] Monihan deposition at 42.
[18] Monihan deposition at 45.

2.)    There is no evidence academy training on Wanteds nor discussion of Wanteds during training on constitutional standards for arrests.

3.)    Officers are instructed during field training, or informal peer-to-peer discussions, the purpose of a Wanted is to further an investigation by enabling officer to conduct custodial interrogation of a suspect and absent the custodial interrogation they may not apply for an arrest warrant.

4.)    Lieutenant Morrow said he has not received any continuing education on Wanteds.[19]

5.)    Lieutenant Burk said he did could not recall receiving training on Wanteds at the academy.[20]

6.)    Lieutenant Gomez said he is not aware of any documents prior to 2015 that said probable cause was required for Wanteds.[21]

7.)    Officer Walsh said he does not recall any in-service training on Wanteds.[22]

8.)    Officer Partin said there was no academy training on department policies,[23] and he learned about Wanteds informally through other officers.[24]

b.    Based on the General Order that does not require probable cause; the lack of evidence of academy training; the lack of continuing professional training on Wanteds; and the lack of training bulletins or other documents that describe the standards for entering a Wanted, I believe that St. Louis County PD's training practices created a risk that officers:

1.)    Would issue Wanteds without probable cause (leading to warrantless arrests without probable cause), and;

---

[19] Morrow deposition at 99.
[20] Burk deposition at 90.
[21] Gomez deposition at 262.
[22] Walsh deposition at 50.
[23] Partin deposition at 35.
[24] Partin deposition at 47.

11

2.)     Would make warrantless arrests and detentions of people to interrogate them to build evidence to support a warrant application.

c.     Changes to the Guidance Regarding Wanteds (2015)

1.)     In 2015, the St. Louis County Police Department changed the formal requirements for issuing a Wanted by adding a sentence about probable cause to the General Order on Wanteds.

2.)     As compared to the steps I have seen other police departments take in order to provide police officers with information on updated General Orders, I have seen no documents indicating that the St. Louis County Police Department provided their officers with guidance on how to comply with the updated general orders.

    a.)     Generally, when a police department issues a new general order on a substantive matter there will be documented training to ensure the department's employees know and understand the changes.

    b.)     These training sessions may consist of supervisor review, training bulletins, and formal classroom training.

3.)     Furthermore, I have not seen any documents or reviewed any deposition testimony that outlines that the St. Louis County Police Department trained its officers on how or when to issue a Wanted, or crucially, how to do so in a way that does not infringe upon the subject's constitutional rights.

4.)     In 2015, the DOJ published a report of its Investigation of the Ferguson Police Department. In that report, DOJ criticized the use of Wanteds and stated:

    a.)     "While Wanteds are supposed to be based on probable cause, they operate as an end-run around the judicial system. Instead of swearing out a warrant and seeking judicial authorization from a neutral and detached magistrate, officers make the probable cause determination themselves and circumvent the courts."[25]

---

[25] DOJ Ferguson report at 22.

b.) "This system creates the risk that Wanteds could be used improperly to develop evidence necessary for arrest rather than to secure a person against whom probable cause already exists. Several officers described Wanteds as an investigatory tool. According to Chief Jackson, "a Wanted allows us to get a suspect in for booking and potential interrogation." One purpose, he said, is "to conduct an interview of that person." While it is perfectly legitimate for officers to try to obtain statements from persons lawfully detained, it is unconstitutional for them to jail individuals on less than probable cause for that purpose."[26]

5.) Given the concerns raised in the Ferguson Police Department DOJ report, along with the high risk for potential abuse in the issuance of the initial Wanted, I would expect to see a variety of specific training and remedial measures, including:

a.) Formalize training within the police academy;

b.) Documented FTO Training.

c.) Continuing professional training that may include formalized classroom training, documented briefing training, training bulletins, or other formalized documented training.

6.) Instead, the training that the St. Louis County Police Department provides to its officers falls below what I would expect of a police department of its size.

7.) Moreover, St Louis County continues to instruct its officers that the purpose of a Wanted is to further an officer's investigation by enabling them to conduct a custodial interrogation of a suspect in order to obtain additional evidence to support a warrant application, which as discussed earlier, creates a serious risk of violating the Fourth Amendment requirements regarding warrantless arrests and detentions.

20.    Wanteds vs. Warrants

---

[26] DOJ Ferguson report at 23.

13

a.    At present, per the guidance of the St. Louis County Police Department, a police officer must have probable cause to believe that an individual has committed a crime before being able to issue a Wanted for him/her.

b.    The probable cause requirement is, at least by its terms, the same as the requirement for applying for a warrant from a neutral magistrate.

c.    None of the documents that I have reviewed indicate to me that there is a difference in the standards governing the issuance of a Wanted and the application for a warrant, except for the fact that the latter requires the approval of a neutral magistrate, while the former only requires the investigating officer's determination.

d.    Based on the deposition testimony that I have reviewed, it appears a Wanted is actually—and continues to be—used as a tool to further the officer's investigation to bolster a warrant application, regardless of whether the officer has probable cause.

21.    There are alternative strategies which the St Louis County Police Department could use to accomplish the same law enforcement goals it is purportedly trying to achieve through its Wanteds practice. Indeed, these alternative strategies are the practices that are routinely used by police agencies across the nation.

a.    The St. Louis County Police Department appears to uniformly believe a telephone interview is not acceptable because they lack certainty on whom they are speaking with. However, there are cases here where the victims have identified the caller and then allowed officers to conduct an interview. Officers often conduct interviews over the phone and are able to identify the caller by asking questions that may be unique to the caller such as identifying information that may not be readily available to someone else. In-person interviews are not a mandatory investigative practice.

b.    There is no generally accepted practice in policing that once a person has referred an officer to an attorney or declined to provide a statement that the officer must conduct an in-person interview. This seems to be an artificial requirement created by St. Louis County designed to decrease the volume of criminal referrals, rather than a legal requirement or a requirement generally accepted in police practices. Indeed, if a person is arrested based on a Wanted there is no reason why the arresting officer could not ask them if they were willing to provide a statement. If the person declines, there would be no need to further detain the individual and the officer could complete their investigation.

14

c.     Instead, it is the practice of the St. Louis County Police Department to hold people arrested on Wanteds for hours simply waiting for the officer who issued the Wanted to come to work on their normal shift or because the officer does not want to be inconvenienced with an immediate response.  Officers are trained they have 24-hours to conduct their interview and investigating officers appear to read this as permission to keep someone in custody for up to that long, whether or not it is necessary.

d.     There are a wide variety of investigative steps that could be undertaken to obtain an interview (*e.g.*, identifying phone callers by asking unique identifying questions or confirming their identity by a person who knows the caller; when possible record the telephone conversations; attempts to interview at home or work places; or seek an arrest warrant if there is probable cause).  The cases and depositions in this matter show these steps are often ignored and officers will not take the simplest of steps of going by a person's home or office to attempt and interview.

22.    Review of individual Wanteds

a.     My review of Wanteds of the named plaintiffs supports my belief that Wanteds are vulnerable to abuse and are issued where an officer is lacking probable cause.

    1.)    Dwayne Furlow

        a.)    November 2015 Wanted[27]

            1.    Officer Partin spoke with the victim who claimed Mr. Furlow took her cell phone with some force, but she could not remember exactly what he did.

            2.    Officer Partin spoke with Mr. Furlow on the telephone and he denied he took the victim's cell phone.

            3.    A witness claimed he saw Mr. Furlow take the victim's cell phone, but there are no other details in the report.

            4.    Officer Partin knew where Mr. Furlow lived, so he or his colleagues could have returned at another time to attempt to question Mr. Furlow.

---

[27] 15-61723.

5. Based on conflicting statements, a victim who could not recall what occurred shortly after the incident and a lack of a detailed statement by the witness, a reasonable police officer would not have believed there was probable cause to arrest Mr. Furlow. A reasonable officer would have either made efforts to conduct additional investigation, or would have forwarded the report to prosecutor and a judge to make a probable cause determination and seek a warrant.

2.) Ralph Torres

a.) February 2015 Wanted[28]

1. Detective Clements was assigned to conduct a child abuse investigation. Detective Clements watched a video of a forensic interview of the child that had been conducted by a private contractor for Social Services, but she never spoke with the Social Services investigator.

2. Detective Clements spoke with Mr. Torres on the phone and he referred her to his attorney. Detective Clements called the attorney several times, but never spoke with her.

3. Based solely on her conversation with the victim's mother and the video of the forensic interview, Detective Clements issued a Wanted for Mr. Torres on February 23, 2015.

4. Detective Clements acknowledged she never went to Mr. Torres' home, she never spoke with the Social Services investigator, she had never worked with the Advocacy Center before (the Advocacy Center is a private organization that conducted the forensic interview of the victim), she had not seen the Children's Division letter dated March 30, 2105 (prior to Mr. Torres arrest) indicating that Social Services was closing their case due to conflicting statements.[29]

---

[28] 14-66436.
[29] Clements deposition at 158-164 and 174.

5.     Detective Clements said she was not aware there was a custody dispute involving the victim.[30]

6.     This was not a situation in which exigent circumstances were present because the child was in the custody of its mother and Mr. Torres was not a flight risk.

7.     Mr. Torres' detention following his arrest on the wanted was unreasonably long.

     a.     Mr. Torres was arrested at his home on the Wanted at 11:00 am on April 1, 2015 by a patrol officer.

     b.     Detective Clements did not attempt to interview Mr. Torres until 8:40 p.m. even though she was advised of Mr. Torres' arrest at 11:45 a.m. Detective Clements said she is not allowed to come into work early to conduct interviews and her shift did not start until 4:30 p.m.[31]

     c.     When Mr. Torres was interviewed he invoked his right to remain silent.

     d.     Detective Clements did not contact the prosecutor until 10:00 am the following morning and the prosecutor declined to issue any charges.

     e.     Mr. Torres was released at 11:00 a.m. on April 2, 2015.

     f.     Detective Clements acknowledged she took no additional investigative steps after interviewing Mr. Torres, he was not a flight risk, he was not a danger to anyone, and she could have released him and still applied for a warrant.[32]

3.)     Howard Liner

     a.)     March 2015 Wanted[33]

---

[30] Clements deposition at 186.
[31] Clements deposition at 218-9.
[32] Clements deposition at 229230.
[33] 15-16866.

17

1. Genise Mundy told an officer her vehicle had been stolen and she believed her boyfriend, Mr. Liner, was responsible. There was no evidence of any investigation and there were no facts to support Ms. Mundy's subjective belief that Mr. Liner had taken her vehicle, yet the officer entered a Wanted for Mr. Liner without probable cause.

2. No reasonable police officer would have believed there was probable to arrest Mr. Liner under these circumstances.

3. It was later discovered the vehicle had been repossessed.

b.) August 2015 Wanted[34]

1. A victim reported that his vehicle rims had been stolen and he suspected Mr. Liner of theft. The victim said Mr. Liner had been in his yard. The victim went inside his home and when he returned outside the rims were missing and Mr. Liner was gone.

2. Based on this statement alone, the officer entered a wanted for Mr. Liner. While there was reason to contact Mr. Liner to continue an investigation, there was no probable cause to suggest Mr. Liner had stolen the rims. Particularly when Mr. Liner was driving a BMW and the rims could not have possibly fit inside his vehicle.

3. Mr. Liner was arrested based on the Wanted. Mr. Liner denied he committed the theft and said that he had a dispute with the victim. Moreover, Mr. Liner said the victim had listed the rims for sale on Craigslist, even though the victim had rented the rims and did not own them.

4. No reasonable police officer would have believed there was probable cause to have arrested Mr. Liner.

c.) Mr. Liner's October 5, 2015 arrest based on the August 25, 2015 Wanted Exceeded the State Mandated 24- Hours

1.) Mr. Liner was arrested on October 5, 2015 at 4:45 a.m. by the St. Louis Metro Police by Officer Stephens. He was

---

[34] 15-47656.

booked at 5:38 a.m.  The Prisoner Processing Copy indicates he was "Involved in an argument, records check revealed [fugitive] warrant."

2.) The Prisoner Processing Copy lists the 0/24 Hour Expiration as October 6, 2015 at 4:45 a.m.

3.) The Prisoner Processing Copy lists the charge as "01-15020994 FUG-STVEH-ST. LOUIS COUNTY PD (F)." "STVEH" appears to mean stolen vehicle, but it may have been used for vehicle parts (theft of rims).  If it refers to a stolen vehicle, then it appears Mr. Liner was arrested for the March 2015 Wanted, not the August 2015 Wanted, or that the March 2015 Wanted was still active at the time of Mr. Liner's arrest.

4.) St. Louis County Police Department was notified of Mr. Liner's arrest on October 5, 2015 at 10:51 a.m., more than 6 hours after his arrest and 5 hours after he was booked into the jail.[35]

5.) On October 5, 2015 at 6:30 p.m. St. Louis County Police Department updates its investigative report that states Officer Goelz transported and booked Mr. Liner at "Justice Services" and Officer Goelz notified Officer Schueter of the arrest.[36]

6.) At 7:41 p.m., Mr. Liner is booked into the Justice Center. The arrest type is "H24" apparently a reference to a 24-hour hold.  The arrest date/time is listed as October 5, 2015 at 6:30 p.m. which appears to be the time that Officer Goelz began to transport Mr. Liner, but ignores the time Mr. Liner had already been in custody with St. Louis Metro Police.

7.) On October 6, 2015 at 9:28 a.m., nearly 5 hours after the 24-hour period had expired, Officer Schlueter arrived at the Justice Center to interview Mr. Liner.  Officer Schlueter

---

[35] Fugitive Notification form.
[36] DEF-RFP1 000057-8.

19

departed the interview at 10:18 a.m. Mr. Liner was released from custody at 10:58 a.m. – 30 hours and 13 minutes after his arrest.

8.)  Mr. Liner's arrest was unreasonably long.  He was held more than 30 hours solely for a 50-minute interview that began after Mr. Liner had been in custody for 28 hours and 43 minutes.

9.)  The detention of Mr. Liner for more than 24-hours is a misdemeanor,[37] yet there is no evidence that Officer Schlueter, or anyone else, was charged with a crime and there is no evidence that anyone from the St. Louis County Police Department initiated an internal investigation or sought internal disciplinary action against Officer Schlueter or anyone else for their criminal misconduct.

10.)  No reasonable police officer would have held Mr. Liner for more than 24-hours.


_____          _____
Jeffrey J. Noble                                            Date  8/25/17

---

[37] §544.170 R.S.Mo.

# EXHIBIT A

# JEFFREY J. NOBLE

Rancho Santa Margarita, CA 92688

Telephone: (949) 279-4678
*Email:* jeffnoble@cox.net
www.policeconduct.net

## EXPERIENCE

*CONSULTANT/EXPERT WITNESS* (2005 – Present)

Provide consulting and expert witness services on a wide range of law enforcement and personnel issues including misconduct, corruption, use of force, workplace harassment, pursuits, police administration, training, police operations, criminal and administrative investigations, interviews and interrogations, civil rights violations, police procedures, and investigations.

*DEPUTY CHIEF OF POLICE* (April 2014 – January 2015)

Westminster Police Department, California
(Sworn 87; Civilian – 40; Population- 91,377; 10 sq. mi.)

Served as an interim Deputy Chief of Police to review Internal Affairs, auditing processes, department policies and procedures, risk management and to facilitate the efforts of a new external oversight agency.

*DEPUTY CHIEF OF POLICE* (September 1984 – July 2012)

Irvine Police Department, California
(Sworn – 205, Civilian – 100; Population: 217,000; 70 sq. mi.)

Served as a Patrol Officer, Narcotics Detective, Traffic Detective, Training Sergeant, SWAT sergeant and Commander, Internal Affairs, Sergeant, Lieutenant, Commander and Deputy Chief of Police.  As the Deputy Chief of Police, I was responsible for all operations of the Irvine Police Department including Patrol, Traffic and Investigations.

## EDUCATION

<u>Western State University, College of Law</u> (Irvine, California)
J.D. *with honors*, 1993.
Assistant Editor, <u>Consumer Law Journal</u>.  California State Bar, 1994, #170911.

<u>California State University at Long Beach</u>
B.A. Criminal Justice, 1989

# JEFFREY J NOBLE

_Senior Management Institute for Police_
Police Executive Research Forum.  Boston University, Boston, Massachusetts, 2002

## PUBLICATIONS

_Books:_

Noble, J., and G. Alpert, _Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight_.  Prospect Heights, IL. Waveland Press (2008).

_Chapters:_

Alpert, G., J. Noble and J. Rojek, _Solidarity and the Code of Silence_  Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).

Noble, J., and G. Alpert, _State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?_ (Updated) Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Seventh Edition (2015).

Noble, J., and G. Alpert, _State Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?_ Dunham, R. and G. Alpert (Eds.).  Critical Issues in Policing: Contemporary Readings.  Prospect Heights, IL, Waveland Press.  Sixth Edition (2009).

_Articles:_

Stoughton, S., Alpert, G. and Noble, J., _Why Police Need Constructive Criticism_, The Atlantic (December 23, 2015)  http://www.theatlantic.com/politics/archive/2015/12/officer-porter-mistrial-police-culture/421656/

Stoughton, S., Noble, J. and Alpert G., _Better Information is the Key to Policing Reform,_ The Atlantic, (September 24, 2015) http://www.theatlantic.com/politics/archive/2015/09/better-information-is-the-key-to-policing-reform/406696/

Noble, J., _Rethinking Tactical Team Warrant Entries_, The Tactical Edge (Summer 2014).

Noble, J. _Assessing Police Discretion,_ The Journal of California Law Enforcement (Vol. 47, No. 4, 2013).

Noble, J. and G. Alpert, _Criminal Interrogations of Police Officers After Use-of-Force Incidents,_ FBI Law Enforcement Bulletin (September 2013).

Noble, J. and G. Alpert, _What Do We Really Know About American Policing?_ The Journal of California Law Enforcement (Vol. 47, No. 1, 2013).

Noble, J., _Do I Need A SWAT Team?  Threat Assessments for Warrant Services_, The Tactical Edge (Winter 2013).

# JEFFREY J NOBLE

Alpert, G., J. Rojek and J. Noble, *The Cognitive Interview in Policing: Negotiating Control*. ARC Centre of Excellence in Policing and Security: Briefing Paper, Australian Government Research Council (June 2012).

Noble, J. and G. Alpert, *Evaluating the Quality of Law Enforcement Investigations: Standards for Differentiating the Excellent, Good and Reasonable, From the Unacceptable*. The Journal of California Law Enforcement (Vol. 46, No. 1, 2012)

Noble, J., *Police Explorers: Protecting a Valued Asset*. The Journal of California Law Enforcement (Vol. 45, No. 3, 2011).

Noble, J., and G. Alpert, *Lies, True Lies and Conscious Deception: Police Officers and the Truth*. Police Quarterly, Volume 12, Number 2 (June 2009).

Noble, J., Assessing *Witness Credibility*. International Association of Chiefs of Police, Training Key #597 (2006).

Noble, J., Albertsons *Homicide: An Active "Shooter" Response*, The Tactical Edge (Fall 2004).

Noble, J., Police *Officer Truthfulness and the <u>Brady</u> Decision*, Police Chief Magazine (October 2003).

Noble, J., *The Boomerang Employee – What to do When a Fired Employee Comes Back*, The Journal of California Law Enforcement (Volume 37, No. 1, 2003).

Noble, J., Why *Appearance Matters*, Network – California Peace Officers' Association Newsletter (August 2001).

Noble, J., *Tactical Team Basics: Warrants*, The Tactical Edge (Summer 2000).

Noble, J., Encouraging *Interaction*, Minnesota Cities Magazine (Volume 84, Issue 11, November 1999).

Noble, J., *Neighborhood Watch Evolves Into Community Engagement Tool in Irvine*, Community Policing Consortium. www.communitypolicing.org/publications/artbytop/w6/w6noble.htm (October 1999).

Noble, J., Childhood Experiences Find a Place in Today's Public-Safety Strategies, Community Links (Ph. VI, No.3, Issue 9 - Summer 1999).

Noble, J., *Police Pursuits: Law Enforcement or Public Safety?* The Journal of California Law Enforcement (Volume 33, No.1, 1999).

Noble, J., *Alternative Work Schedules can be an Evolution of Team Policing*, Network - California Peace Officers' Association Newsletter (December 1998).

Noble, J., *Continuing Police Training: The Interactive Multimedia Approach*, The Journal of California Law Enforcement (Volume 29, No.1, 1995).

Noble, J., *Environmental Advertising Claims: "Ozone Friendly"* Consumer Protection, 2 W. St. U. Consumer L.J. 95 (1993).

## SELECTED PROFESSIONAL ACTIVITIES

*Presenter* – Developing or Revitalizing an Internal Affairs Unit. Public Agency Training Council: Internal Affairs Conference (December 2014)

*Presenter* – Addressing Police Misconduct: Standards to Consider. The International Association of Chiefs of Police Annual Conference (October 2014).

Updated August 21, 2017

# JEFFREY J NOBLE

*Presenter* – Reducing Traffic-Related Officer Injuries and Deaths.  The International Association of Chiefs of Police Annual Conference in Orlando, Florida (October 2014).

*Participant* – Reducing Violence and Improving the Rule of Law: Organized Crime, Marginalized Communities, and the Political Machine.  Carnegie Endowment for International Peace. Washington, D.C. (September 2014)

*Presenter* – Preventing Corruption in Police Institutions.  Police Accountability in Democracies: First International Congress on Police Internal Affairs. Los Cabos, Baja California Sur, Mexico (October 2013).

*Presenter* – Testilying: Lies, True Lies, and Conscious Deception: Police Officers' Truth and the Brady Decision. American Psychological Association Annual Conference in Honolulu, Hawaii (July 2013).

*Presenter* – Police Misconduct Issues: Police Explorers and Reasonableness of Internal Affairs Investigations, The International Association of Chiefs of Police Annual Conference in San Diego, California (October 2012).

*Peer Review* – Building and Enhancing Criminal Justice Researcher-Practioner Partnerships, National Institute of Justice (June 2012).

*Committee Chairperson* – California Peace Officers' Association Communications Sub-Committee. Responsible for publication of the Journal of California Law Enforcement (Jan. 2012 – present)

*Presenter* – The Lying Police Officer: Is Any Deception Acceptable?  With Karen Kruger.   The International Association of Chiefs of Police Annual Conference in Denver, Colorado (Nov. 2009).

*Presenter* – State-Created Danger: Should Police Officers be Accountable for Reckless Tactical Decision Making?  The Academy of Criminal Justice Sciences Annual Meeting in Boston, Massachusetts. (March 2009).

*Committee Chairperson* – Major Cities Chiefs of Police Task Force in Internal Affairs. Los Angeles, California (2005-2008).

*Peer Review* – Boston Police Department: Enhancing Cultures of Integrity Technical Assistance Guide, Office of Community Oriented Policing Services #TDL 2008-371 (July 2008)

*Peer Review* – Undocumented Immigrants in U.S./Mexico Border Counties: The Cost of Law Enforcement and Criminal Justice Services, National Institute of Justice #TDL 2008- 321 (December 2007).

*Presenter* – Truth or Consequences: Dealing with the Deceitful Police Officer, with Jeffrey Schlanger and Michael Stone, The International Association of Chiefs of Police Annual Conference, Los Angeles, California (November 2004).

*Presenter* - Albertsons Homicide: An Active "Shooter" Response, The California Association of Tactical Officers Annual Conference, Palm Springs, California (September 2004).

*Presenter* – Boomerang Employees, COPS Conference, Washington, D.C. (2002).

# JEFFREY J NOBLE

## PROFESSIONAL AFFILIATIONS

*California Peace Officers' Association* – Chair, Communications Sub-Committee (2012 – present)
*Police Executive Research Forum*
*International Association of Chiefs of Police*
*National Tactical Officers' Association*
*Special Olympics Torch Run* Southern California Region, Assistant Director (1997 – 2012)

## CONSULTING/EXPERT WITNESS

2017    <u>Furlow v. St. Louis County Police</u> (Plaintiff) (Expert Report)
        Use of "Wanteds"
        Darius Charney, Center for Constitutional Rights, 666 Broadway, 7th Floor, New York, N.Y. 10012
2017    <u>Williamson v City of Chicago</u> (Defense) (Expert Report)
        Monell allegation Officer involved shootings
        Shneur Nathan, Nathan and Kamionski, LLP, 140 S. Dearborn, Suite 1510, Chicago, IL 60603
2017    <u>Curtin v County of Orange</u> (Plaintiff) (Expert Report) (Deposition) (Trial)
        Monell allegation -sexual misconduct
        Jeremy Jass, 4510 E. Pacific Coast Highway, Suite 400, Long Beach, CA 90804
2017    <u>Hernandez v City of Chicago</u> (Defense) (Expert Report) (Deposition)
        Officer Involved Shooting
        Tiffany Harris, Senior Corporation Counsel, City of Chicago Law Department, 30 North LaSalle, Suite 900, Chicago, IL 60602
2017    <u>Estate of Horton v. Tift County, et. al.</u>, (Plaintiff) (Deposition)
        Pursuit
        Brent Savage, Savage, Turner & Pinckney, 102 E. Liberty, 8th Floor, Savannah, GA 31401
2017    <u>Spradling v. Hastings, City of Little Rock</u> (Plaintiff) (Expert Report)
        Use of deadly force
        Michael Laux, Laux Law Group
2017    <u>State of Minnesota v. Yanez</u> (Prosecution) (Expert Report) (Trial)
        Use of deadly force
        Richard Dusterhoft, Office of the Ramsey County Attorney, Criminal Division Director
2017    <u>Cansler v. Fairfax County</u> (Plaintiff) (Expert Report) (Deposition)
        Use of Force – Taser
        Victor M. Glasberg & Associates, 121 S. Columbus Street, Alexandria, VA 22314
2017    <u>Coleman v. City of Peoria</u> (Defense) (Expert Report)
        Alleged Wrongful Conviction

# JEFFREY J NOBLE

Laura M. Ranum, The Sotos Law Form, 550 East Devon Avenue, Suite 150, Itasca, IL 60143

2017 <u>Yancy v. CHP</u> (Plaintiff) (Expert Report) (Deposition)
Use of Force Resulting in Death
Dave Fox, Fox Law, 225 West Plaza, Suite 102, Solana Beach, CA 92075

2017 <u>Rivera v. City of Chicago</u> (Defense) (Expert Report) (Deposition)
Monell allegations
Eileen E. Rosen, Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200, Chicago, Ill.

2017 <u>Jones-Walton v. Lake Eve Resorts</u> (Plaintiff) (Expert Report)
Eviction of Hotel Guests
Jeremy Tor, Spangenberg, Shibley & Liber, LLP, 1001 Lakeside Ave. East, Suite 1700, Cleveland, Ohio 44114

2017 <u>Gassman v. Spokane County</u> (Defense) (Expert Report) (Deposition)
Allegation of wrongful conviction
Michael Kitson, Patterson, Buchanan, Forbes & Leitch, 2112 Third Avenue, #500, Seattle, WA 98121

2017 <u>Torres v. State of New Mexico Police</u> (Plaintiff) (Expert Report)
Officer Involve Shooting
Eric D. Dixon, 301 S. Avenue A, Portales, NM 88130

2017 <u>McGee v Madison County</u> (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Jeffrey Rosenblum, Rosenblum & Reisman, PC, 6070 Popular Avenue, Suite 550, Memphis, TN 38119

2017 <u>LaPorta v. City of Chicago</u> (Defense) (Expert Report) (Deposition)
Monell allegations
Eileen E. Rosen, Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200, Chicago, Ill.

2017 <u>Dixon v Georgia Department of Public Safety</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Carl R. Varnedoe, Jones, Osteen & Jones, 608 E. Oglethorpe Hwy., Hinesville GA 31313

2017 <u>Joseph v. City of Austin</u> (Plaintiff) (Expert Report)
Officer Involved Shooting
Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2017 <u>Alma M v. County of Tulare</u> (Plaintiff) (Expert Report) (Deposition)
Sexual Assault
Douglas Rochin, Kabateck, Brown, Kellner, 644 South Figueroa, Los Angeles, CA 90017

2016 <u>Theney v. City of Los Angeles</u> (Plaintiff) (Expert Report) (Deposition)
High-risk car stop
John Burton, The Law Offices of John Burton, The Marine Building, 128 North Fair Oaks Avenue, Pasadena, California 91103

2016 <u>Hoefgen v. City of Tacoma</u> (Defense) (Expert Report)

Updated August 21, 2017

# JEFFREY J NOBLE

Pursuit
Jean P Homan, Deputy City Attorney, Tacoma City Attorney's Office, 747 Market Street, Suite 1120, Tacoma, WA 98402

2016 Hooks v. Brewer (Plaintiff) (Expert Report) (Deposition)
Officer Involved Shooting
Brian Spears, G. Brian Spears, P.C., 1126 Ponce de Leon Avenue, Atlanta, Georgia 30306

2016 Reyes v. City of Fresno (Plaintiff) (Expert Report)
Officer Involved Shooting
Michael Haddad, Haddad & Sherman, 505 Seventeenth Street, Oakland, CA 94612

2016 Koka v. MTS (Plaintiff) (Expert Report) (Deposition)
Detention, arrest, use of force
Dale Dixon, 402 W. Broadway, #1500, San Diego, CA 92101

2016 Casillas v. City of Calexico (Defense) (Arbitration testimony)
Officer involved shooting
Stefanie Vaudreuil, Liebert, Cassidy, Whitmore, 550 West "C" Street, San Diego, CA 92101

2016 Fields v. City of Chicago (Defense) (Expert Report) (Deposition) (Trial)
Police Practices
Dan Nolan, Dykema, 10 South Wacker Street, Suite 2300, Chicago, IL 60606

2016 Mendoza v. USA (Plaintiff) (Expert Report)
Police Procedure Traffic Collision
Linda G. Workman, Dicks and Workman, 2720 Symphony Towers, 750 B Street, San Diego, CA 92101

2016 Myles v. County of San Diego (Plaintiff) (Expert Report) (Deposition)
Use of Force – K9 bite
Linda G. Workman, Dicks and Workman, 2720 Symphony Towers, 750 B Street, San Diego, CA 92101

2016 Ramos v. City of Fullerton (Defense) (Arbitration testimony)
Use of force
Scott Tiedemann, Liebert, Cassidy, Whitmore, 6033 W. Century Blvd., Los Angeles, CA 90045

2016 Stewart v. City of Memphis (Plaintiff)
Officer Involved Shooting
Murray Wells, Horne & Wells, PLLC, 81 Monroe Ave., Suite 400, Memphis, TN 38103

2016 People v Sandy and Perez (Prosecution) (Interview) (Trial)
Officer Involved Shooting Criminal Prosecution
Randi McGinn, McGinn Carpenter Montoya and Love, 201 Broadway Blvd. SE, Albuquerque, NM 87102

2016 Crump v. City of St. Louis (Plaintiff) (Expert Report)
Use of Force
Linda Powers, Groves Powers, LLC, 1310 Papin Street, Suite 108, St. Louis, MI

2016 Manzera v. City of Chicago (Defense) (Expert Report)
*Monell* Allegation – Reasonableness of Administrative Investigations and Disciplinary Actions

# JEFFREY J NOBLE

Harry Arger, Dykema, 10 South Wacker, Suite 2300, Chicago, IL 60606

2016    Landaverde v. City of Fontana (Defense) (Deposition)
Reasonableness of Code 3 Response
Shannon Gustafson, Lynberg & Watkins, 1100 Town & Country Rd, Suite 1450, Orange, CA 92868

2016    Hammond V City of Seneca, South Carolina (Plaintiff) (Expert Report)
Officer Involved Shooting
Eric Bland, Bland Richter, 1500 Calhoun, Columbia, SC 29202

2016    Stanfill v. City of Indio (Defense) (Arbitration testimony)
Reasonableness of disciplinary action
James Oldendorph, Liebert, Cassidy, Whitmore, 6033 West Century Blvd., Los Angeles, CA 90045

2016    Kletter v. City of San Mateo (Defense) (Expert Report)
Use of Force
David King, Carr-McClellan, 216 Park Road, Burlingame, CA 94010

2016    Klupperberg v. City of Chicago (Defense) (Expert Report) (Deposition)
Monell allegation
Chaka Patterson, Jones-Day, 77 W. Wacker Drive, Chicago, IL 60601

2016    Jurkowski v. City of Seattle (Defense) (Expert Report) (Deposition)
Monell and use of force allegation
Andrew Myerberg, Seattle City Attorney's Office, 600 Fourth Ave., 4th Floor, Seattle, WA 94124

2016    Ruiz-Cortez v. City of Chicago (Defense) (Expert Report) (Deposition)
Allegation of wrongful conviction
Eileen E. Rosen, Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200, Chicago, Ill.

2015    Winston (Tamir Rice) v. City of Cleveland (Plaintiff) (Preliminary Expert Report)
Officer involved shooting
Zoe Salzman, Emery, Celli, Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor, New York, NY 10020

2015    Daulphin County v. Mearkle (Prosecution)(Consultation)
Prosecution of police officer involved in an on-duty shooting
Johnny Bear, Senior Deputy District Attorney, 101Market Street, Harrisburg, PA 17101

2015    Porter v. Louisville Jefferson County Metro Government (Defense) (Expert Report) (Deposition)
Allegation of wrongful conviction
Lisa A. Schweickart, Jefferson County Attorney
531 Court Place, Suite 900, Louisville, KY 40202

2015    Lopez v. County of Sonoma (Plaintiff) (Expert Report) (Deposition)
Use of force; officer involved shooting
Arnoldo Casillas, Casillas & Associates
3500 W. Beverly Blvd., Montebello, CA 90640

Updated August 21, 2017

# JEFFREY J NOBLE

2015 <u>Cosme v. City of New York</u> (Plaintiff) (Expert Report) (Deposition)
Allegation of wrongful conviction
Elizabeth Saylor, Emery, Celli, Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor, New York, NY 10020

2015 <u>Johnson v. Shasta County, et.al.</u> (Plaintiff) (Expert Report)
Use of force; search warrant; confidential informant
Michael Haddad, Haddad & Sherman, 505 Seventeenth Street, Oakland, CA 94612

2015 <u>Coleman v. City of Chicago</u> (Defense) (Expert Report) (Deposition)
Monell allegation sufficiency of internal affairs investigations and discipline
Jonathan Green, Corporation Counsel, City of Chicago, 30 N. LaSalle Street, Suite 900, Chicago, IL 60602

2015 <u>Stevens-Rucker v. City of Columbus, Ohio</u> (Plaintiff) (Expert Report) (Deposition)
Officer involved shooting
Nicholas DiCello, Spangenberg, Shibley & Liber, LLP, 1001 Lakeside Ave. East, Suite 1700, Cleveland, Ohio 44114

2015 <u>Cicinelli v. City of Fullerton</u> (Defense) (Expert Report) (Arbitration Testimony)
Use of Force
Scott Tiedemann, Liebert, Cassidy, Whitmore, 6033 W. Century Blvd., Los Angeles, CA 90045

2015 <u>Antuna v. County of Los Angeles</u> (Plaintiff) (Expert Report) (Deposition)
Workplace Retaliation
Bradley Gage, Law Offices of Goldberg and Gage, 23002 Victory Blvd., Woodland Hills, CA

2015 <u>Akbarieh v. City of Chico</u> (Plaintiff) (Expert Report) (Deposition)
Use of force
Michael Haddad, Haddad & Sherman, 505 Seventeenth Street, Oakland, CA 94612

2015 <u>Wolfe v. City of Fullerton</u> (Defense) (Expert Report) (Arbitration testimony)
Use of force
Scott Tiedemann, Liebert, Cassidy, Whitmore, 6033 W. Century Blvd., Los Angeles, CA 90045

2015 <u>Johnson v. City of Tulsa, OK</u> (Defense) (Expert Report)
*Monell* claim.  Allegation of planted evidence, failure to supervise and discipline.
Guy Fortney, Brewster & DeAngelis, PLLC, 2617 East 21st Street, Tulsa, OK 74114

2015 <u>Guerra v. Bexar County Sheriff</u> (Plaintiff) (Expert Report)
5:14-cv-00652-XR (Western District of Texas, San Antonio Division)
Officer Involved Shooting
Scott Hendler, Hendler Lyons Flores, 1301 West 25th Street, Suite 400, Austin, TX 78705

2015 <u>Lopez v. City of Chicago</u> (Defense) (Consultation)
12-C-5751 (Northern District of Illinois, Eastern Division)
Use of force
George J. Yamin, Jr., City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 1720, Chicago, Ill. 60602

2014 <u>Seoanes v. City of Austin, Texas</u> (Plaintiff) (Expert Report)
Police Pursuit

# JEFFREY J NOBLE

Jeff Edwards, The Edwards Law Firm, 1101 East 11th Street, Austin, TX 78702

2014   Schuknecht v. City of Yakima, Washington (Defense) (Expert Report)
1:14-CV-3017-TOR (Eastern District of Washington)
Allegation of False Arrest
Thomas Miller, Christie Law Group, 2100 Westlake Ave. N., Suite 206, Seattle, WA 98109

2014   Saetrum v. Ada County Sheriff's Department, Idaho (Defense) (Expert Report)
1:13-cv-00425-WBS (District of Idaho)
Use of Force
Ray J. Chacko, Ada County Prosecuting Attorney-Civil Division, 200 W. Front Street, Rm 3191, Boise, Idaho 83702

2014   McKinney v. Village of Robbins, IL (Defense) (Expert Report) (Deposition)
08 L 006025 (Circuit Court of Cook County, IL)
Course and scope of employment
Steven Puiszis, Hinshaw Law Offices, 222 N. LaSalle Street, Suite 300, Chicago, IL 60601

2014   Elmore v. City of Greenwood (Plaintiff) (Expert Report) (Deposition)
3:13-cv-01755-DCN-TER (District of South Carolina, Columbia Division)
Alleged wrongful conviction
Alan W. Guffy, Jenny Horne Law Firm, LLC, 133 East 1st North Street, Ste. 5, Summerville, SC 29483

2014   Rice v. Ada County (Defense) (Expert Report)
1:13-cv-00441-BLW (District of Idaho)
Use of Force
Justin Cafferty, Ada County Prosecuting Attorney, 200 W. Front Street, Rm 3191, Boise, Idaho 83702

2014   Stewart v. Stone County Sheriff, MI (Defense) (Expert Report) (Deposition)
6:12-cv-05075-DPR (Western District of Missouri, Southwest Division)
Allegation of improper investigation that led to false conviction
Tina Fowler,Baird, Lightner, Milsap, 1901-C South Ventura Ave., Springfield, MI 65804

2014   Velasquez v. City of Norwich, CT (Plaintiff) (Consultation)
Use of force
David Jaffe, 100 Pearl Street, Hartford, CT 06103

2014   Garland v. City of Seattle, WA (Defense) (Expert Report) (Deposition)
2:13-cv-2196 RSL (Western District of Washington at Seattle)
Use of Force
Brian Maxey, Seattle City Attorney's Office, 600 Fourth Ave., 4th Floor, Seattle, WA 94124

2014   Stratton v. King County Sheriff, WA (Defense) (Expert Report)
(Superior Court of Washington for King County)
Pursuit
David Hackett, King County Prosecuting Attorney's Office, 500 Fourth Ave., Seattle, WA 98104

2014   Miccichi v. City of Federal Way, WA (Defense) (Expert Report)

# JEFFREY J NOBLE

2:13-cv-01815-RSL (Western District of Washington at Seattle)
Allegation of unlawful entry and arrest
Thomas Miller, Christie Law Group, 2100 Westlake Ave. N. Ste. 206, Seattle, WA 98109

2014  McNeil v. USA and City of Miami (Plaintiff) (Expert Report) (Deposition)
13-cv-22501-KMM (Southern District of Florida, Miami Division)
Use of force
Ray Taseff, 225 Alcazar Avenue, 2nd Floor, Coral Gables, FL 33134

2014  Bassett v. City of Burbank, California (Plaintiff) (Expert Report)(Deposition)
14-01348-SVW (Central District of California)
Monell allegation
Bradley Gage, Law Offices of Goldberg and Gage, 23002 Victory Blvd., Woodland Hills, CA

2014  Newkirk v. South Carolina Department of Public Safety (Plaintiff) (Expert Report) (Deposition) (Trial)
4:13-cv-01635-RBH-KDW (District of South Carolina)
Unlawful arrest.
Dick Harpootlian, 1410 Laurel Street, Columbia, South Carolina 29202

2014  Wilson v. Town of Bloomfield (Plaintiff) (Consultation)
Excessive force
David Jaffe, 100 Pearl Street, Hartford, CT 06103

2014  Thomas v. City of Colville (Defense) (Expert Report)
cv-13-120-TOR (Eastern District of Washington, Spokane)
Allegation of false arrest and excessive force
Thomas Miller, Christie Law Group, 2100 Westlake Ave. N. Ste. 206, Seattle, WA 98109

2014  Bradford v. City of Yakima (Defense) (Expert Report) (Deposition)
13-cv-3012-TOR (Eastern District of Washington, Yakima)
Reasonable of investigation and interrogation related to a false confession
Jason Rosen, Christie Law Group, 2100 Westlake Ave. N. Ste. 206, Seattle, WA 98109

2014  Nye v. Pennsylvania State Police (Plaintiff) (Expert Report) (Trial)
1:13-cv-01905-JEJ (Middle District of Pennsylvania)
Pursuit and use of force
Christopher Marzzacco, Anapol Schwartz, 4807 Jonestown Road, Suite 148, Harrisburg, PA 17190

2014  Waiters v. Union City, GA (Plaintiff) (Consultation)
Officer involved shooting
William J. Atkins, Atkins & Fife, 6400 Powers Ferry Road, Suite 355, Atlanta, GA 30339

2014  Giles v. City of Chicago (Defense) (Expert Report) (Deposition) (Trial)
12-cv-6746 (Northern District of Illinois, Eastern Division)
*Monell* allegation reasonableness of officer-involved shooting investigations
George J. Yamin, Jr., City of Chicago, Department of Law, 30 N. LaSalle Street, Suite 1720, Chicago, Ill. 60602

2013  Andison v. City of Vancouver, WA (Defense)

# JEFFREY J NOBLE

3:13-cv-05730-RBL (Western District of Washington, Tacoma Division)
SWAT officer involved shooting.
Daniel G. Lloyd, Assistant City Attorney, City of Vancouver, P.O. Box 1995, Vancouver, WA 98668-1995

2013  Franklin and Lawson v. City of Seattle (Defense) (Expert Report)
12-1994-MAT (Western District of Washington at Seattle)
Excessive force
Brian Maxey, Seattle City Attorney's Office, 600 Fourth Ave., 4th Floor, Seattle, WA 94124

2013  Morales v. City of Seattle, WA (Defense) (Expert Report)
12-cv-02235-JCC (Western District of Washington at Seattle)
Excessive force
Brian Maxey, Seattle City Attorney's Office, 600 Fourth Ave., 4th Floor, Seattle, WA 94124

2013  Young v. City of Federal Way, WA (Defense) (Expert Report) (Deposition)
12-cv-01487-JCC (Western District of Washington at Seattle)
Officer involved shooting
Robert Christie, Christie Law Group, 2100 Westlake Ave. N., Suite 206, Seattle, WA 98109

2013  Wright v. City of Memphis, TN (Plaintiff) (Expert Report) (Trial)
Unlawful detention, excessive force, unreasonable administrative investigatory and disciplinary practices
Andrew Clarke, 6250 poplar Avenue, Second Floor, Memphis, Tennessee 38119

2013  Wade v. City of Fruitland, ID (Plaintiff) (Expert Report)
Officer involved shooting
R.A. Coulter, Idaho Employment Law Solutions, 776 E. Riverside Drive, Suite 240, Eagle, Idaho

2013  Ellison v. City of Littlerock, AR (Plaintiff) (Expert Report) (Deposition)
Officer involved shooting and *Monell* allegation
Michael Laux, Laux Law Group, 201 E. Ohio Street, 3rd Floor, Chicago, IL.

2013  Fuery v. City of Chicago (Defense) (Expert Report) (Deposition)
Reasonableness of internal affairs investigations and discipline – *Monell* allegation
Marshall L. Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, L.L.C., 150 North Michigan Avenue, Suite 2139, Chicago, IL 60601-7524

2013  Ramirez v. City of San Antonio (Texas)  (Plaintiff) (Expert Report)
Use of force
Jeff Edwards, The Edwards Law Firm, 706 Guadalupe, Austin, TX 78701

2013  Zachary v. City of Hutto (Texas)  (Plaintiff) (Expert Report)
Use of force
Jeff Edwards, The Edwards Law Firm, 706 Guadalupe, Austin, TX 78701

2013  Doe v. City of San Diego  (Plaintiff) (Expert Report) (Deposition)
Sexual criminal misconduct, *Monell* allegation
Linda G. Workman, Dicks and Workman, 2720 Symphony Towers, 750 B Street, San Diego, CA 92101

2013  McGehee v. Glynn County (Georgia) (Plaintiff) (Expert Report)

# JEFFREY J NOBLE

Officer involved shooting, *Monell* claim
William J. Atkins, Atkins & Fife, 6400 Powers Ferry Road, Suite 355, Atlanta, GA 30339

2013   <u>Moore v. Miller, City of Denver</u> (Defense) (Expert Report)
*Monell* claim.  Reasonableness of internal affairs investigations and discipline.
Matt Hader, City of Denver

2013   <u>McDonnell v. County of Suffolk, NY</u> (Plaintiff) (Expert Report)
Use of force including use of Taser resulting in death of detainee
Stephen Civardi, Civardi & Obiol, P.C., 23 South Main Street, Suite 30, Freeport, N.Y. 11520