IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE FURLOW et al, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause Number: 4:16 CV 00254 HEA |
| | ) | |
| v. | ) | |
| | ) | |
| JON BELMAR, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT EDWARD SCHLUETER**

**Preliminary Statement**

In Doc # 129 this Court entered an Opinion, Memorandum and Order granting the Motion for Summary Judgment that had been filed by each and every defendant who had been named and served in this lawsuit. Up to that point however, St. Louis County police officer Edward (Ed) Schlueter, had not been named as a defendant.  So because Howard Liner had neither substituted nor named the police officer who allegedly had issued a wanted without probable cause, this Court did not consider or dispose of Liner's claims in Doc # 129.  Since then a Second Amended Complaint (Doc # 130) has been filed wherein Howard Liner named Edward Schlueter, alleging that he was as the police officer who had issued the wanted without probable cause.  Service of Officer Schlueter was accepted by mail.  Defendant Ed Schlueter, who is being sued in his personal capacity for actual and punitive damages, has filed a motion for summary judgment incorporating all of the previously filed statements of material facts and responses to Statements of Facts, and incorporating the Memorandum of Law in Support of Defendants' Motion for Summary Judgment and Defendants' Responses and Reply Memorandum.

1

This is a Memorandum of law in Support of P.O. Ed Schlueter's Motion for Summary Judgment which is now being filed.

**Statement of Facts**

*Howard Liner's underlying claim against P.O Schlueter*

Officer Schlueter's career and training included some college, the Military reserves, the Eastern Missouri Law Enforcement Academy, which was interrupted right before graduation because "9/11" occurred and Schlueter's military unit was activated; then during Schlueter's military service he attended and graduated from a military law enforcement academy; years later, he attended and graduated from the St. Louis County police academy (SAF 311, 312). Since becoming a County police officer Schlueter has been involved in community outreach involving a Ferguson talk radio, and a Community policing Facebook, and a program involved with opening racial communications and trust with law enforcement (SOF 313). In 2016 Schlueter received the officer of the year award in the City of Dellwood, and the officer of the quarter for North County award (SOF 314).

Officer Schlueter's training on probable cause is the belief that a crime was committed by an individual which is above reasonable suspicion (SOF 315). His procedure when he arrives at a crime scene and thereafter is as follows: stay safe, talk to the victim, look for evidence, attempt to identify witnesses, gather evidence, speak to as many people as he can, contact the subject, get their side of the story, document in a report, log the evidence, put the whole case together, have supervisor review, and whenever there is an arrest or wanted, to have probable cause (319).

On August 25th 2015 Officer Schlueter received a dispatch of a theft that reportedly occurred at a residence, and so he drove to the residence and arrived at 7:42 p.m.  (SOF 225). Upon arrival he went inside, people were loud, people were screaming; there was yelling and

commotion, with everyone saying that Jaylen's rims and tires had been stolen (SOF 226, 227, 228)   The mother of Jaylen specifically identified Howard Liner as the person who had stolen tires-rims from her son (SOF 229).    By then Jaylen was not on the scene and so P.O. Schlueter spoke to Jaylen on the telephone who said that he knows Howard Liner really well, (SOF 229), in fact he had known him for a long time (SOF 230); that Jaylen had had the rims and also stereo equipment outside in his front yard where he had been attempting to sell stereo equipment to Liner, that Jaylen went inside the house, came out and when he came out he observed Liner's silver BMW driving off.  (SOF 229).  Jaylen identified a neighbor who had said that he had witnessed the rims being put in the back of Liner's car before driving off (SOF 229).  Officer Schlueter spoke with others in the house, who Schlueter thought were related to each other; the mother of Jaylen told Schlueter that she had seen Liner driving off (SOF 229).  Officer Schlueter went to the witness neighbor's house and knocked on the door (SOF 231).  (Also see the response to SOF 451, and see SOF 461 which references Schlueter's deposition p. 113 where he testified that when he knocked on the door, no one answered).  Officer Schlueter went to the last known address of Howard Liner, knocked on the door, walked around the house and looked for the silver BMW (SOF 232).  Officer Schlueter made the judgment that he had probable cause that Howard Liner had committed a felony (SOF 233), and this probable cause belief was based on what Jaylen had told him and what the other people in Jaylen's house including the mother had told him, and because these people specifically identified Howard Liner saying that Liner had been on the scene and saying that Liner had driven away with the rims. (SOF 234).   (Also see the response to SOF 449. In SOF 449 plaintiff had cited p. 162 of Schlueter's deposition. The context of the discussion which included plaintiff's citation began at p. 161 and continued to 173 where more detail was discussed including that the probable cause was relative to everyone

saying to Officer Schlueter that Jaylen's rims had been stolen, that Schlueter had not made up the accusation, but that all of these people were yelling and talking, saying that the rims had been stolen, and that the mother had even put her son on the telephone, who explained in detail what had occurred. (SOF 449 referencing pages 161-173 of Schlueter's deposition).

Also see plaintiff's supplemental facts, SOF 443, where plaintiffs refer to and attach Exh. 30, which is the police investigative report (SOF 443) (The police investigative report is Complaint Number 15-47656, marked by plaintiffs as Exh. 30, which is Doc # 87-28). According to this police investigative report, Officer Schlueter was dispatched at 19:34 to the home of Jaylen Davis following a report of a larceny, arrived at 19:42, was told the larceny occurred at 19:00, the reported value of the stolen property was $3,000. According to the report, when Officer Schlueter made contact with Jaylen Davis, Jaylen stated that he had been in his front yard attempting to sell stereo equipment to Howard Liner, Jaylen went inside to get more items that he wished to sell to Liner, came back out, and when he did come back out he saw that Howard Liner was gone, as were the four wheels/rims, and when Jaylen noticed this, he also noticed Howard Liner's silver BMW driving away. The silver BMW was also specifically described as having Illinois plates. A detailed description of the stolen property was also given to the officer. The report indicates that Jaylen stated that a neighbor observed a man who Jaylen believed was Liner, putting the wheels in the back of a silver BMW. Officer Schlueter went to that neighbor's house, but the neighbor did not answer; Schlueter did a neighborhood canvass. (See SOF 443 and SOF 448 and Exh 30, Doc # 87-28). Also see the response to SOF 454 which cites page 115 of Schlueter's deposition that P.O. Schlueter canvassed the areas to happen to see any sliver BMW's on the way to try to find Liner.

4

Paragraphs 124 and 125 allege that Mr. Liner had been alerted that a Wanted had been issued regarding allegations of theft (also see SOF 212). See response to SOF 455 p. 173 of Schlueter's deposition where Schlueter stated that he had attempted to contact Liner.

After he was unable to find or contact the suspect, and after he determined that a felony had been committed by the suspect, and that he had probable cause to believe that Howard Liner was the suspect who committed the felony, P.O. Schlueter issued a wanted.  (See the response to SOF 457 and the references to Schlueter's deposition pages 33, 34, 66, 117 161.  As to p.117 Officer Schlueter indicated that he entered the wanted after he typed up the report and did the area canvass and attempted to reach Howard Liner).

Mr. Liner was later arrested by the City of St. Louis Police Department   (SOF 213). While testifying in his deposition Mr. Liner could not recall any details regarding when, or where, or even why he was arrested by the City of St. Louis police department (SOF 215).  (Also see SOF 214).  There was a form that plaintiff presented to attempt to avoid summary judgment, which is Doc 87-34, and marked by plaintiff as Exh. 38.  This form, a St. Louis Metropolitan police department prisoner processing form, indicates that Liner was arrested by a City of St. Louis police officer at "3153 S. Kingshighway" for a "domestic incident."   (Also see the response to SOF 461, and see Doc # 98 response to SOF 74 and 75 of Plaintiff, which all refer to this City of St. Louis form (Exh 38, Doc # 87-34) that suggests that the St. Louis Metropolitan Police Department was called to the scene of an argument involving Mr. Liner and another individual; and then at some point Liner was released from the City charges.)

Plaintiff was transported to St. Louis County by a conveyance officer (Doc 87-28 pages 9 and 10) after the City of St. Louis police department released Mr. Liner from its custody for

what, as has been stated, was referred to in Exh. 38 as a domestic incident that caused the City of St. Louis police department to respond (Exh 38, Doc # 87-34).

After Mr. Liner was transferred to the County Justice Center, Officer Schlueter interviewed Mr. Liner (SOF 217) where they shook hands (SOF 235). Schlueter asked Liner if he wished to talk about the case; Liner said yes, the Miranda warning to remain silent was given, the waiver was signed (SOF 235). Schlueter told Mr. Liner what allegations had been made against Liner (SOF 219. Liner told Schlueter that he did not do it (SOF 220).  Liner gave his side of the story (SOF 219).  There was a discussion about what model BMW was driven, and as it turned out, P.O. Schlueter drove the same model, and Schlueter then questioned if he had probable cause thinking that Liner could not have moved that stolen property in such a small vehicle (SOF 220, 235).  Schlueter told Liner that he had gone to Liner's house.  (SOF 235). Liner said that he had watched Schlueter walk around the house on cameras, which Schlueter presumes were motion activated (SOF 235).  Schlueter told Liner that he would not apply for a warrant against him, and then Schlueter signed for Liner's immediate release (SOF 235). Schlueter believes that Liner had been in custody "easily" less than 24 hours (SOF 216).  Before the release, P.O. Schlueter counseled Mr. Liner saying whatever you do, don't retaliate against Jaylen; I don't want you arrested for something stupid (SOF 221).

Since that encounter, P.O. Schlueter and Howard Liner have seen each other several times and have been respectful and cordial toward each other (SOF 239).  Also see SOF 218).

For whatever it might be worth, only for consideration of probable cause, Mr. Liner already had some felony convictions SOF 222).

**Statement of Law**

*Summary Judgment standard:*

6

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56 (a); *Celotex Corp v. Catrett,* 477 U. S. 317, 322 (1986); Hill *v. Walker*, 737 F. 3d 1209, 1216 (8th Cir. 2013).  Substantive law determines which facts are critical and which are irrelevant; only factual disputes that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*477 U. S. 242, 248 (1986).  Once the moving party discharges the burden of informing the court of the basis of its motion, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute.  *Id.*at 247. In order to survive a motion for summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F. 3d 782, 801 (8th Cir. 2011) *(quoting Putman v. Unity Health Sys.*, 348 F. 3d 732, 733-34 (8th Cir. 2003)).

*Qualified Immunity:*

The threshold inquiry is whether the defendant, being sued in his individual capacity, is immune from suit under the doctrine of Qualified Immunity.  *Doc # 129 page 15 of 30).*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U. S. 223, 231 (2009) *(quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Also see  *DeBoise v. Taser Int'l. Inc.,* 760 F. 3d 892, 896 (8h Cir. 2014).  "Qualified Immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly

7

incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U. S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U. S. 731, 743 (2011).   Also see *Habiger v. City of Fargo et al*, 80 F. 3d 289, 295 (8th Cir. 1996).   "The entitlement is an immunity from suit rather than a mere defense to liability….it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U S. 511, 526 (1985). (Emphasis in original).

It should be abundantly clear, that Officer Schlueter did not knowingly violate the law, he acted in good faith at all times, he thought he was doing the right thing,  he tried to do a good job with limited resources, he did not transgress any bright lines, he tried to follow his training.

*Probable Cause*

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'"   *Gilmore v. City of Minneapolis*, 837 F. 3d 827, 832 (8th Cir. 2016) (*quoting Borgman v. Kedley*, 646 F. 3d 518, 522-23 (8th Cir. 2011)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable."  *Greenman v. Jessen*, 787 F. 3d 882, 888 (8th Cir. 2015) "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Baribeau v. City of Minneapolis*, 596 F. 3d 465, 474 (8th Cir. 2010) (*quoting Devenpeck v. Alford*, 543 U. S. 146, 152 (2004).

"Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." *Duhe v. City of Little Rock*, 902 F. 3d 858, 862 (8th Cir. 2018) *(quoting Kuehl v. Burtis*, 173 F. 3d 646, 650 (8th Cir. 1999).   "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

*Illinois v. Gates*, 462 U. S. 213, 232 (1983). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U. S. 160, 175 (1949). "Whether probable cause existed at the time of the arrest is a question of law for the court." *Duhe* at 862 quoting *Fisher v. Wal-Mart Stores, In.*, 619 F. 3d 811, 816 (8th Cir. 2010). Officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect but officers need not conduct a mini trial prior to making an arrest. *Id.*

Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to obtain a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest. *United States v. Webster,* 625 F. 3d 439, 442 (8th Cir. 2010). Instead, the mere "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity," is all that is required. *United States v. Mendoza*, 421 F. 3d 663, 667 (8th Cir. 2005). In making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances. *United States v. Henderson*, 613 F. 3d 1117, 111 (8th Cir. 2010).

When multiple people told Officer Schlueter that a crime had been committed, and even gave details of the stolen property and even identified the suspect by name and even described the suspect's vehicle and license plates, any reasonable police officer would think that there was a substantial chance that a crime had been committed. It is undisputed that Officer Schlueter believed that he had probable cause that Liner committed a crime, and his belief is objectively reasonable.

*Punitive Damages*

With regard to plaintiff Liner's punitive damages claim against Officer Schlueter, the defendant's conduct must be motivated by evil motive or intent or involve a reckless or callous

indifference to the federally protected rights of others. *Hollins v. Powell*, 773 F. 2d 191, 197 (8th Cir. 1985), but clearly there is no hint of evil motive or intent or reckless indifference. Schlueter was dispatched to respond to a theft, he investigated, he got details he canvassed, he went to the home, he testified that he tried to be fair to everyone, he acted in good faith, he shook hands with Liner, he counseled him so that Liner would not be arrested for retaliation against others, he has continued to run into Liner and he treats him with respect.

**Conclusion:**

There are no material facts in dispute.  Officer Edward Schlueter is entitled to judgment as a matter of law.  He had probable cause to arrest Howard Liner, or at the very least he had arguable probable cause.  He was acting in good faith.  Although plaintiff may argue that there was not enough evidence for a conviction that attempt to second guess Officer Schlueter would not defeat Qualified Immunity.   Summary Judgment should be entered on behalf of defendant Edward Schlueter.

      Respectfully Submitted,

      PETER J. KRANE
      COUNTY COUNSELOR

      /s/ Michael E. Hughes_____
      Michael E. Hughes     #23360MO
      Associate County Counselor
      Mhughes2@stlouisco.com
      41 So. Central Avenue, 9th Floor
      Clayton, MO. 63105
      314-615-7009; Fax 314-615-3732
      Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served electronically to all counsel of record via this Court's Electronic Filing System  this  7th day of January, 2019

                                               /s/   Michael E. Hughes