UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE FURLOW et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-254 HEA |
| | ) | |
| JOHN BELMAR et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ed Schlueter's Motion for Summary Judgment [Doc. No. 135], Defendants St. Louis County and St. Louis County Police Chief John Belmar's Motion for Summary Judgment [Doc. No. 77], and Plaintiff Howard Liner's Motion for Partial Summary Judgment [Doc. No. 84]. The parties oppose the respective motions. The motions have been fully briefed.

This Court's previous Opinion, Memorandum and Order dated October 5, 2018 [Doc. No. 129] ("Previous Order") fully disposed of two of the three named Plaintiffs' claims. The claims of Howard Liner ("Liner") against Defendants John Doe 1-2, St. Louis County and John Belmar ("Belmar") were stayed pending substitution of named defendants pursuant to this Court's Order to Substitute and Serve the Doe Defendants [Doc. No. 128]. Plaintiffs filed a Second Amended Complaint substituting Defendant Ed Schlueter ("Schlueter") as and for the Doe

1

Defendants. Therefore, the claims and parties presently before the Court are Counts I, II and III, each alleged by Plaintiff Liner against Defendants St. Louis County, Belmar, and Schlueter.

The Court now considers Defendants' Motion for Summary Judgment with respect to Liner's claims against St. Louis County and Belmar and Plaintiffs' Motion for Partial Summary Judgment with respect to Liner's claims, as they were not ruled on in the Previous Order. Also considered herein is Defendant Schlueter's separate Motion for Summary Judgment.

For the reasons set forth below, Plaintiff Liner's motion for summary judgment as to Count I is denied. Defendant Schlueter's motion for summary judgement is denied as to Count I and Count III, and granted as to Count II. Defendants St. Louis County and Belmar's motion for summary judgment is granted as to Count I and Count II, and denied as to Count III.

**Facts and Background**

**"Wanteds"**

Under Missouri State Law, a law enforcement officer "may arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated any ordinance or law of this state, including a misdemeanor or infraction, over which such officer has jurisdiction." 544.216 RSMo. A "wanted," which is entered into a computer system by a law

enforcement officer, identifies a person who is wanted for a crime, but for whom no warrant has been issued. Wanteds differ from warrants in that no judicial determination of probable cause is required to enter a wanted. If a St. Louis County Police officer encounters a person with a wanted entered against him or her, the officer is authorized by St. Louis County Police Department ("SLCPD") policy to take that person into custody. The wanted, as displayed to the arresting officer, does not include a description of the probable cause on which it is based.

In its Previous Order, this Court held that wanteds are a type of warrantless arrest, and therefore permissible only if the wanted is based on probable cause.

**Facts Not In Dispute**

The underlying "wanted" in this matter was issued by Schlueter on August 25, 2015. It identified Liner as wanted for the theft of a set of 22 inch vehicle wheels and tires from Jaylyn Davis.

As for facts, Schlueter's August 25, 2015 Investigative Report is undisputed as representative of what Schlueter heard, observed, and believed at the time he issued the wanted. For their motions for summary judgement, however, Defendants rely heavily on Schlueter's deposition. The deposition was taken more than 17 months after the events of August 25, 2015 and includes details about the incident that were not mentioned in the Investigative Report. Liner objects to Defendants' characterization of the latter provided details as undisputed fact.

The facts not in dispute, as recorded in Schlueter's Investigation Report, are summarized as follows. At 7:34 p.m. on August 25, 2015, Schlueter was dispatched to a residence on a larceny call. After he arrived at the residence, Schlueter "contacted the victim identified as Jaylyn Davis." It is undisputed that Davis was not at the residence when Schlueter arrived, and that Schlueter only spoke to Davis on the phone. Davis stated that he and Liner had been in the front yard, where Davis was trying to sell stereo equipment to Liner. Liner was an acquaintance of Davis. Davis went inside to get some other items he wanted to sell. When he came back out, Davis noticed that Liner was gone and four wheels and tires were missing from the front yard. Davis stated that the wheels and tires were rented from "Rent 'N' Roll" and had an estimated value of $3,000.00.

Davis told Schlueter that he observed Liner driving away in a silver BMW with Illinois license plates. Davis also told Schlueter that one neighbor had observed a black male putting the wheels into the back of a silver BMW.

Schlueter attempted, but was unable to contact the neighbor, or anyone else, at the address Davis gave him. Schlueter further canvassed the area "with negative results." Schlueter then entered the wanted for Liner.

At 4:45 p.m. on October 5, 2015, Liner was arrested by the St. Louis Metro Police and taken into custody. The only charge listed on the Metro Police processing document refers to a document with the same reference number as the

4

wanted entered by Schlueter on August 25, indicating that Liner was arrested based solely on the outstanding wanted. Liner was then taken into the custody of St. Louis County Police at 6:30 p.m. Schlueter canceled the wanted after he was notified that Liner was in custody.

On October 6, Schlueter interviewed Liner in custody. Liner waived his Miranda rights and told Schlueter that on August 25, he and Davis had argued about money on the phone. Liner said that he had owed Davis for some stereo equipment he bought, but that he was not going to pay Davis back because Davis had stolen money from Liner's house. Liner's stepdaughter was a friend of Davis, and had let him into Liner's house. Liner told Schlueter that Davis was trying to sell the wheels and other stolen items on Craigslist.

Liner told Schlueter that he had been out with his girlfriend on August 25th, and was not at Davis' home. Liner said he owned a silver BMW, model 325i.

Schlueter noted in his report that "a set of four 22 [inch] rims and wheels would be too large to fit in the trunk of a BMW 325i." He also referred to his earlier report, noting that he had been unable to locate the neighbor that Davis claimed was a witness to Liner stealing the wheels and tires. Liner was released from the custody of the SLCPD at 10:58 a.m.

## Discussion

Liner claims that Schlueter violated his Fourth, Fifth, and Fourteenth Amendment rights. In addition to Liner's claims against Schlueter in his individual capacity, Liner also claims that St. Louis County and Police Chief Belmar, in his official capacity, are liable for the alleged violations. Liner's Second Amended Complaint ("SAC") alleges three counts.

Count I alleges that Liner's Fourth Amendment rights were violated when Schlueter issued a wanted for Liner's arrest without probable cause and without seeking a judicial determination of probable cause. Liner further alleges Fourth Amendment violations based on his arrest and detention pursuant to the wanted and without actual probable cause or a judicial determination of probable cause.

Count II alleges that Schlueter retaliated against Liner for exercising his Fifth Amendment right and refusing to answer questions from Schlueter.[1]

Count III alleges that Defendants deprived Liner of the liberty interests of freedom of movement and freedom to conduct his daily lives without fear, as well as his interest in not being classified stigmatically as a person who is subject to summary arrest and detention. Liner alleges that he was deprived of these interests without due process or procedure with which to challenge the wanted, thereby violating his Fourteenth Amendment right to due process.

---

[1] As discussed below, the Complaint, which applied to all three Plaintiffs, made no allegations that Liner refused to answer questions or invoked his Fifth Amendment rights.

Plaintiffs moved for partial summary judgment as to Count I only. Defendants moved for summary judgment on all Counts.

**Summary Judgment Standard**

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex,* 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. *Anderson,* 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences

are to be drawn in its favor. *Anderson,* 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

**Qualified Immunity**

Whether Schlueter is immune from suit under the doctrine of Qualified Immunity is a threshold issue. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)) (internal quotations omitted). "The entitlement is an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 , 86 L. Ed. 2d 411 (1985) (emphasis in original).

**Municipal and Governmental Entity Liability**

A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (*quoting Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690–91 (1978); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89 (1989).

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Ware v. Jackson Cnty., Mo.,* 150 F.3d 873, 880 (8th Cir.1998) (internal quotation marks and citation omitted). "[I]n order to state a viable § 1983 claim . . . plaintiff is required to plead facts sufficient to show at least an inference that his constitutional rights were violated as a result of action taken pursuant to an official policy, or as a result of misconduct so pervasive among non-policymakers as to constitute a widespread custom and practice with the force of law." *Davis v. St. Louis County, Mo.,* 2015 WL 758218, at *12 (E.D.Mo. Feb. 23, 2015) (citation omitted).

**Analysis**

## Count I

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) (*quoting Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)) (internal citations omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (*quoting Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

"Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." *Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018) (*quoting Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir 1999). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "The substance of all the definitions of probable cause is a

reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotation omitted).

"Whether probable cause existed at the time of the arrest is a question of law for the court." *Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018) (*quoting Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Nevertheless, "the burden remains on the proponent of [qualified] immunity to establish the relevant predicate facts, and at the summary judgment stage the nonmoving party is given the benefit of all reasonable inferences." *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000). "In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." *Id.*

Here, Liner's and Schlueter's cross-motions for summary judgment as to Count I must be denied because there are genuine disputes of fact that are material to the issue of whether or not Schlueter had arguable probable cause to enter a wanted for Liner. Liner disputes many of Defendants' proposed facts based on the absence of those facts in Schlueter's Investigative Report. Those proposed facts are taken from Schlueter's deposition and are relied upon by Defendants for their probable cause argument, namely:

- that Schlueter spoke not only to Davis on the phone, but also to Davis' mother and other people that were in the house;

- that Davis' mother told Schlueter that Liner had stolen the wheels;
- that Davis' mother told Schlueter that she saw Liner drive away.

Defendants claim that Liner cannot defeat their motion for summary judgment because Liner fails to come forward with "specific facts showing that there is a genuine issue for trial." This argument is not well taken. Liner clearly argues that the factual dispute concerns the additional material information given in Schlueter's deposition versus his Investigative Report. Liner distinguishes the Investigative Report, which was made contemporaneously with the events of August 25, 2015 from Schlueter's deposition, which was taken 17 months later when Schlueter's memory of the events was not fresh. Moreover, Schlueter testified his investigative reports usually contain the details upon which he bases probable cause, and that he based his probable cause determination on the statements of "[Davis'] mother and the other individuals on scene." However, the only statements mentioned in the Investigative Report are those of Davis, creating a credibility question that is not in the purview of this Court.

Whether Schlueter had even arguable probable cause to enter a wanted for Liner is subject to a factual dispute regarding the veracity of the deposition details. The undisputed facts alone do not conclusively establish probable cause.

> [L]aw enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as "law enforcement would not [be] unduly hampered ... if the agents ... wait[ ] to obtain

> more facts before seeking to arrest." . . . An officer need not conduct a "mini-trial" before making an arrest, *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir.), *cert. denied*, 519 U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996); *Morrison v. United States*, 491 F.2d 344, 346 (8th Cir.1974), but probable cause does not exist when a "minimal further investigation" would have exonerated the suspect. *See Bigford*, 834 F.2d at 1219; *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) (a police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest"); *Romero v. Fay*, 45 F.3d 1472, 1476–77 and n. 2 (10th Cir.1995) (police need not interview alleged alibi witnesses but must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention"); *Sevigny v. Dicksey*, 846 F.2d 953, 956–58 (4th Cir.1988) (no probable cause where officer unreasonably failed to interview witnesses at scene of automobile accident who would have corroborated plaintiff's version of story); *Baptiste*, 147 F.3d at 1259 (officers may weigh the credibility of witnesses in making a probable cause determination, but they may not ignore available and undisputed facts).

*Kuehl v. Burtis*, 173 F.3d 646, 650–51 (8th Cir. 1999). Schlueter relied on the statements of only one witness – the purported victim – who had left the scene minutes after the alleged larceny. Schlueter also relied on the alleged victim's assertions that some other witness saw Liner taking the wheels, even though that person, like the alleged victim, was not locatable minutes after the events. Based solely on the undisputed facts, Schlueter could not reasonably have believed there to be probable cause to arrest Liner without a warrant. The disputed facts, which cannot be judged by this Court, concern predicate facts material to the issues of probable cause and qualified immunity, and thus preclude summary judgment as to Schlueter and Count I.

As for St. Louis County and Belmar, Count I alleges that they are liable as governmental entities because "issuing Wanteds in order to cause the arrest and detention of individuals without obtaining a prompt determination of probable cause by a neutral judicial magistrate" violates the Fourth and Fourteenth Amendments. This Court rejected this argument in its Previous Order, finding that the lack of a prompt judicial determination of probable cause does not render the Wanted system unconstitutional. Accordingly, Defendants St. Louis County and Belmar are entitled to summary judgement as to Count I.

### Count II

In the SAC, Plaintiffs claim that Defendants violated their Fifth Amendment rights by issuing retaliatory wanteds, and detaining them pursuant to these wanteds, after they invoked their right to silence and right to have counsel present during questioning while on the phone with Defendant officers. However, the SAC contains no allegations that Liner ever refused to answer Schlueter's (or any officer's) questions or otherwise invoked his Fifth Amendment rights. Seemingly, Count II erroneously included a claim by Liner against Schlueter. As there is no allegation of an underlying constitutional violation, summary judgment for Count II will be entered in favor of Defendant Schlueter as well as St. Louis County and Belmar.

### Count III

Liner claims that by issuing a wanted for his arrest, Schlueter deprived him of liberty interests including freedom of movement and freedom to conduct his daily lives without fear. Liner alleges that he was deprived of these interests without due process or procedure with which to challenge the wanted issued against him, thereby violating the Fourteenth Amendment right to due process. Liner also claims that the wanted subjected him to classification and stigma as a person who is subject to summary arrest and detention.

Defendants did not brief any arguments regarding Count III in their first Motion for Summary Judgment or in Schlueter's Motion for Summary Judgment. Nevertheless, in its Previous Order, this Court granted summary judgment as to Count III in favor of Defendants. That determination was based squarely on the Court's finding that Defendants had at least arguable probable cause to arrest the relevant Plaintiffs. Here, the question of probable cause cannot be reconciled on summary judgment, and Defendants have not justified their motion for summary judgment as to Count III. Defendants are not entitled to summary judgment as to Count III.

**Conclusion**

Based on the foregoing, Plaintiff Liner's motion for summary judgment as to Count I is denied. Defendant Schlueter's motion for summary judgement is denied as to Count I and Count III, and granted as to Count II. Defendants St. Louis

County and Belmar's motion for summary judgment is granted as to Count I and Count II, and denied as to Count III.

As a matter of clarification, the remaining parties and claims in this case are: Count I – Plaintiff Liner against Defendant Schlueter, and Count III – Plaintiff Liner against Defendants Schlueter, St. Louis County, and Belmar.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants St. Louis County and John Belmar's Motion for Summary Judgment, [Doc. No. 77], with respect to the claims of Plaintiff Howard Liner, is **GRANTED** as to Count I and Count II and **DENIED** as to Count III.

**IT IS HEREBY ORDERED** that Plaintiff Howard Liner's Motion for Partial Summary Judgment, [Doc. No. 84], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ed Schlueter's Motion for Summary Judgment, [Doc. No. 135], is **DENIED** as to Count I and Count III and **GRANTED** as to Count II.

Dated this 15th day of March, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE